CHARLES R. GRECO *vs.* WALTER P. HUBBARD & others.

Hampden.    November 10, 1924. — April 15, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Agency,* Existence of relation, Undisclosed.  *Trust.  Voluntary Association.*

Upon findings by a master to whom was referred a suit in equity wherein the plaintiff sought to establish against one voluntary unincorporated association a debt which had been contracted with him by the trustees of another association, which he alleged acted as agents of the first association, an undisclosed principal, it appeared that the services

were rendered for the construction of a building undertaken by the second association, and that the first association did not become interested in the enterprise until construction had begun when, by mistake, money which it loaned to the second association was not properly secured and, to save a large investment it had made, it procured the resignation of trustees of the second association and substituted as their successors persons of its own choice and itself purchased the interest of all the shareholders of the second association, and thereafter, by negotiations and conferences with the new trustees of the second association, carried on in good faith and without fraud, tried unsuccessfully to recoup its losses. *Held,* that

(1) The relation of the two associations was that of trustee and *cestui que trust* and not that of agent and principal;

(2) The obligation assumed toward the plaintiff by the second association was not the obligation of the first association;

(3) A decree dismissing the bill was warranted.

BILL IN EQUITY, filed in the Superior Court on February 2, 1917, and afterwards amended, seeking to establish a debt alleged to have been contracted by trustees of the Winthrop Club Associates, a voluntary unincorporated association alleged to have acted as agent of Investment Associates, another voluntary unincorporated association, undisclosed principals.

In the Superior Court, the suit was referred to a master. His report was confirmed without an appeal. The suit was heard upon the master's report by *Wait,* J., by whose order a final decree was entered dismissing the bill. The plaintiff appealed.

The case was submitted on briefs at the sitting of the court in November, 1924, and afterwards was submitted on briefs to all the Justices except *Wait,* J.

*F. M. Phelan,* for the plaintiff.

*C. H. Beckwith,* for the defendants.

RUGG, C.J. The plaintiff seeks by this suit in equity to recover compensation due him as architect of a large office building in Springfield. The defendants are Hubbard and Bond as trustees of the Winthrop Club Associates, a voluntary unincorporated association, and Page, MacDonald, Leonard and Hubbard, individually and as trustees of the Investment Associates, a voluntary unincorporated association. The ownership of each association was divided into

fractional parts represented by certificates, for convenience called shares.

The history of this building and the relation of these parties to it briefly narrated is this: One Radding was the owner of the real estate in November, 1915, when he conveyed it to Ellis, Winter and Giles, as trustees of the Winthrop Club Associates. These three persons were trustees under a written declaration of trust, which constituted a strict trust, dated November 1, 1915, and was duly recorded. Radding was the owner of all the shares of the Winthrop Club Associates from November 29, 1915, to September 12, 1916. He was also the president and holder of substantially all the shares of stock of a corporation known as Edward Radding, Inc. In December, 1915, the trustees of the Winthrop Club Associates employed the plaintiff as architect to prepare plans and specifications and details for the construction of the office building on the premises. Edward Radding, Inc., commenced the construction of the building under contract with the trustees of the Winthrop Club Associates. Those trustees on November 28, 1915, executed a mortgage upon the property of the trust for $250,000, together with a construction agreement providing for payments as the construction of the building progressed. That mortgage has remained on the building and its validity is in no way in question.

The defendants Page, MacDonald and Leonard were trustees of the Investment Associates under a declaration of trust dated October 2, 1915, and duly recorded. The Investment Associates was formed and conducted business mainly for the investment of funds belonging to Page, who held most of its shares. All three trustees were active in the business of the trust but its actual transactions were left mainly to Leonard. The first connection of the Investment Associates with the Winthrop Club Associates building was in May, 1916, when Radding approached the trustees for a loan of $60,000, representing that he needed it to use in the construction of the building. These trustees granted the loan. Check for that sum was made to the order of Radding, for which among other securities there was to be

assigned by Radding to the trustees a mortgage for $65,000 to be procured by Radding from the Winthrop Club Associates. It was understood by the trustees of the Investment Associates that this was to be a second mortgage, and Radding agreed with Leonard, who acted for them, to cause to be discharged an existing second mortgage said to be for $40,000 then outstanding and assigned to him. Pursuant to this arrangement a mortgage and note for $65,000 made by the Winthrop Club Associates to Radding were by him assigned to the Investment Associates as security for their note of $60,000 from Radding in return for the loan for that amount to him. The Investment Associates became holder in due course of the $65,000 note. The mortgage for $65,000 contained covenants against all incumbrances except the $250,000 mortgage. There was in fact a second mortgage upon the property of the Winthrop Club Associates for $40,000 to which the mortgage for $65,000 was a junior incumbrance and which Radding at the time and as a part of the consideration of the transaction agreed to discharge, it then being held by him as assignee under an unrecorded assignment. MacDonald and Page as trustees of the Investment Associates understood that the check for $60,000 was not to be delivered to Radding unless as security a second mortgage for $65,000 be delivered on the property of the Winthrop Club Associates. Through some neglect the $40,000 mortgage was not discharged. Leonard, who was the agent for his fellow trustees of the Investment Associates, learned early in August, 1916, that this mortgage had not been discharged, but the other trustees did not know it until January, 1917. This mortgage was not discharged and the mortgage for $65,000 was in truth the third mortgage on the Winthrop Club Associates' property.

In August, 1916, Radding became involved in financial difficulties and about September 12, 1916, work on the building stopped. MacDonald and Page, learning of this, investigated the affairs of the Winthrop Club Associates. At their request its trustees resigned and Bond and Hubbard were elected trustees in their stead. Thereafter, in September, October and November, 1916, the trustees of the Invest-

ment Associates entered into negotiations with Radding and Radding, Inc., as a result of which the contract between the corporation and the Winthrop Club Associates was rescinded in consideration of $30,000 paid to the corporation. The sum of $30,000 was advanced by the Investment Associates to the Winthrop Club Associates. Certificate for one thousand shares in the Winthrop Club Associates was indorsed in blank by Radding and delivered to the Investment Associates. The $30,000 thus available to the Winthrop Club Associates was paid by checks in various amounts to Radding, Inc., except that taxes to the city of Springfield also were paid. Hubbard and Bond, the new trustees of the Winthrop Club Associates, requested the plaintiff to make survey of the building and an estimate of the cost of completing it, and this was done by him. Bond, who was an architect and engineer, acted under the direction of MacDonald and Page. Up to January 11 or 12, 1917, when MacDonald and Page learned that the mortgage for $65,000 was a third instead of a second mortgage on the property of the Winthrop Club Associates, it had been the intention of the Investment Associates to lend to the Winthrop Club Associates the money necessary to complete the building. Upon obtaining that information that intention was abandoned. The second mortgage for $40,000 subsequently was foreclosed and left nothing to the Investment Associates on their $65,000 mortgage, and the shares in the Winthrop Club Associates became valueless.

The various transactions between the Winthrop Club Associates and Radding and Radding, Inc., and the trustees or representatives of the Investment Associates, on which the plaintiff based allegations of fraud, have become immaterial on that issue because the master has expressly found that there was no fraud on the part of MacDonald and Page, that they acted in entire good faith throughout and have lent large sums of money in connection with the building, which have been lost.

The plaintiff, after the coming in of the master's report, which was confirmed without appeal, amended his bill so as to ask that his debt be established against MacDonald, Page

and Leonard: and he stated in open court when the final decree was entered that he "sought no relief against the defendants" Hubbard and Bond and waived all relief against them. He now seeks to maintain this suit on the ground that the defendants MacDonald, Page and Leonard are undisclosed principals of the Winthrop Club Associates.

The Winthrop Club Associates was organized as a valid trust. *Williams* v. *Milton,* 215 Mass. 1. *Dunbar* v. *Broomfield,* 247 Mass. 372, 385. It was not a partnership. The terms of the trust instrument are unlike those in *Frost* v. *Thompson,* 219 Mass. 360, *Flint* v. *Codman,* 247 Mass. 463, 469, and similar cases, where it has been held that a partnership was established.

Nothing in the record justifies or requires the inference that this trust was ever modified, abrogated or terminated. Its representatives alone made the contract with the plaintiff. His transactions from beginning to end were with them. Confessedly the Investment Associates had no relation, except that of creditors, to the Winthrop Club Associates until September 12, 1916. The Investment Associates on that day were merely creditors of the Winthrop Club Associates. At that time two of the trustees of the Investment Associates learned for the first time that Radding was in financial difficulties. The Investment Associates trustees had no power over the Winthrop Club Associates except that of creditors at that time. Two of the Investment Associates trustees asked the trustees of the Winthrop Club Associates to resign, and they requested Bond and Hubbard to act as trustees. All the shares of Winthrop Club Associates trust were transferred to the Investment Associates trust, through arrangements made with Radding. The latter trust lent the Winthrop Club Associates trust $30,000, which sum the latter trust disbursed on its own checks. The fact that most of this money came back to the Investment Associates trustees by Radding paying his debts had no tendency to show that the Winthrop Club Associates did not continue to be a genuine trust. As holder of all the shares of the Winthrop Club Associates, the Investment Associates had a right to name the trustees of the Win-

throp Club Associates trust.   These new trustees spent the
time from September, 1916, to January, 1917, in looking over
and investigating the property of the Winthrop Club As-
sociates trust in order to determine how much it would cost
to complete the building.   It was in January, 1917, that the
trustees of the Investment Associates first learned that
Leonard had invested $65,000 of their money in the Win-
throp Club Associates trust on a third mortgage instead of
on a second mortgage as they had supposed.   The second
mortgage was presently foreclosed and the Investment
Associates have nothing of value to show for a very large
investment.

Of course equity looks through form to the substance of
transactions.   The substance of these transactions on the
facts found by the master was what it purported in form to
be.   Nobody now claims there was any bad faith.   The finding
of the master is clear on that point.   Neither the Investment
Associates nor any of its trustees organized the Winthrop
Club Associates trust.   They organized the Investment
Associates as a valid and honest association to invest the
money of Page.   They lent some of that money to the
Winthrop Club Associates trust.   They honestly got all
its shares, for which an additional large sum of money was
paid.   They can use the Winthrop Club Associates trust as
a valid trust.   They have never deceived the plaintiff. · He
made his contract with the Winthrop Club Associates trust
long before the defendants had anything to do with it.   He
did nothing on the credit of the defendants.   If the Winthrop
Club Associates had been a corporation, no one would con-
tend that the relation of the defendants to it by electing new
officers after they became the stockholders would render them
personally liable for its debts.   Instead of being stockholders
in a corporation, they are the *cestuis que trust* of a valid trust
because they hold all its shares.   Every intendment of the
law is toward the protection of *cestuis que trust* under a valid
trust.

The ground on which it is urged that the plaintiff can re-
cover is that these defendants were undisclosed principals
of their agents, Bond and Hubbard.   As already pointed

out, Bond and Hubbard were trustees, and the defendants, *cestuis que trust.* The *cestui* cannot be held liable as the principal of his trustee merely because he occasionally confers with his trustee about the affairs of the trust.

*Decree affirmed with costs.*