COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* CITY OF SPRINGFIELD
(and a companion case between the same parties).

Suffolk.   December 4, 1946. — February 13, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & RONAN, JJ.

*Taxation*, Distribution of taxes, Corporate franchise tax. *Notice. Electric Company. Corporation*, Electric company, Stockholder. *Trust*, Express trust: what constitutes; Nonresident trustee. *Partnership*, What constitutes. *Words*, "Electric light . . . companies," "Owners."

Notices required by law or by contract to be given by one party to another in order to establish rights or obligations must state with reasonable certainty the essential facts required by law or by contract, as the case may be.   Per RONAN, J.

A certain letter, sent by the commissioner of corporations and taxation to the treasurer of a city in November, 1942, respecting "taxes collected in 1942 and previous years . . . on account of gas, electric light and water corporations chapter 58, section 24," did not meet the requirements of a notice from the commissioner to the city treasurer under G. L. (Ter. Ed.) c. 58, § 25, as amended, as to taxes collected in 1942; and where a notice by the commissioner under that statute, to the effect that nothing was due to the city, was given by the commissioner on August 9, 1944, pursuant to a stipulation in mandamus proceedings against the commissioner, an appeal by the city to the

---

Appellate Tax Board filed on August 14, 1944, gave the board jurisdiction.

A corporation incorporated for the purpose of furnishing light and power by electricity, which sold its electricity for both purposes, was an "electric light company" within the provisions of G. L. (Ter. Ed.) c. 58, § 24, as amended by St. 1933, c. 254, § 23.

A trust and not a partnership was created by an instrument which established a voluntary association and vested the legal title to its property in trustees who were to manage and control its affairs, with authority to acquire securities of Massachusetts gas and electric companies, to sell the whole or any part of the trust estate in their uncontrolled discretion, to appoint officers and employees and fix their compensation, and to declare and pay dividends to shareholders at the discretion of the trustees; which gave to holders of beneficial shares therein the right to meet annually to determine the number of, and to elect, trustees and to vote on the issuance of shares, but no power to control actions of the trustees, and exempted the shareholders from liability for acts of the trustees, officers, agents or representatives of the association; and which provided that the death of a trustee or shareholder would not terminate the trust, but that it was to continue for seventy-five years unless sooner terminated by vote of two thirds of the shareholders.

Trustees holding in trust stock of an electric light company, and not the beneficiaries of the trust, must be regarded as the stockholders in determining what portion of the corporate franchise tax paid by the company, if any, shall be retained by the Commonwealth under G. L. (Ter. Ed.) c. 58, § 24, as amended.

So much of a corporate franchise tax which was paid by an electric light company, all of whose corporate stock was owned by trustees under an indenture of trust, as corresponded to the number of the trustees who were nonresidents of the Commonwealth should be retained by the Commonwealth under the provisions of G. L. (Ter. Ed.) c. 58, § 24, as amended.

APPEALS from decisions by the Appellate Tax Board.

In this court the cases were submitted on briefs.

*C. A. Barnes*, Attorney General, *& W. G. Perrin*, Assistant Attorney General, for the Commissioner of Corporations and Taxation.

*S. A. Moynahan*, City Solicitor, *& C. D. Sloan*, Associate City Solicitor, for the city of Springfield.

RONAN, J. These are two appeals by the commissioner of corporations and taxation from decisions of the Appellate Tax Board that the city of Springfield is entitled to have distributed, credited and paid to it out of the corporate franchise tax paid by the United Electric Light Company to the commissioner in 1942 the sum of $44,650.41, and

out of a similar tax paid by the Western Massachusetts Electric Company to the said commissioner in 1943 the sum of $36,793.04.

The distribution of the proceeds of corporate franchise taxes assessed and collected by the commissioner in accordance with G. L. (Ter. Ed.) c. 63 is governed by G. L. (Ter. Ed.) c. 58, § 24, as amended by St. 1933, c. 254, § 23, which provides that the portion of the "corporate franchise tax paid by gas, electric light, gas and electric light and water companies" on account of stock owned by nonresidents of the State shall be retained by the Commonwealth and the remainder of the tax shall be distributed, credited and paid to the town in this Commonwealth where the company conducts its business and, if its business is carried on in more than one town, then to those towns in certain proportions. Interest paid on said taxes shall be treated as principal in distributing the tax, and abatements shall be deducted in such distribution. § 24A of said c. 58, as appearing in St. 1934, c. 323, § 2. The commissioner shall determine the amount due to each town, shall notify the treasurer of the town, and shall certify to the State treasurer the amount so determined, and the latter shall pay the said amount to the town. The decision of the commissioner is subject to appeal to the Appellate Tax Board. G. L. (Ter. Ed.) c. 58, § 25, as appearing in St. 1934, c. 323, § 3, and as amended by St. 1939, c. 451, § 17; St. 1941, c. 729, § 11; c. 58A, § 6, as appearing in St. 1938, c. 478, § 4, and as amended by St. 1941, c. 609, § 2; c. 726, § 1. See now St. 1945, c. 687.

The United Electric Light Company was engaged in the business of furnishing electricity for light and power principally in Springfield and also in four towns in the immediate vicinity. It was merged on January 1, 1943, with the Western Massachusetts Electric Company. The sole stockholder of these two companies was the Western Massachusetts Companies, an association formed by a declaration of trust.

The commissioner on November 19, 1942, certified in a written communication to the Treasurer and Receiver General that there was due to Springfield, for the years

1940 and 1941, $11,540.75 and $58,063.56, respectively, on account of franchise taxes collected from gas, electric light and water companies under G. L. (Ter. Ed.) c. 58, § 24, as amended. The State treasurer on the next day notified the city to the same effect. Under date of November 27, 1942, the commissioner sent a letter to the treasurer and assessors of Springfield stating that there had been credited to the city certain amounts "from taxes collected in 1942 and previous years." The letter then continued with a list of three items, the last one being "On account of Gas, Electric Light & Water Corporations Chapter 58, Section 24 . . . $69,604.31." Then came a statement that there had been previously forwarded to the city in 1942 certain amounts shown on a list of five items but with the amounts stated in three items. One of the items for which no amount was mentioned read, "On account of Gas, Electric Light & Water Corporations Chapter 58, Section 24 . . . $ none." A letter similar in form to that of November 27, 1942, was sent to the treasurer and assessors of Springfield on November 22, 1943, but this letter did not refer to any corporate franchise taxes collected for any year.

The city brought a petition for a writ of mandamus sometime in 1944 to compel the commissioner to determine, and notify the city of, the amounts due to it from the corporate franchise taxes collected in 1942 and 1943 from the two companies we have mentioned. When the petition came on for a hearing before the single justice on August 9, 1944, the commissioner entered into a stipulation with the city in which he stated that he had determined that nothing was due to the city from these taxes and that he would forthwith give notice of this determination to the city treasurer, and the parties stipulated that the petition might be dismissed. The commissioner on the same date gave such notice to the city treasurer. The city filed with the board on August 14, 1944, an appeal from the decision of the commissioner on the 1942 tax, and a second appeal with reference to the 1943 tax. The board found that the notices of November 27, 1942, and November 22, 1943, were insufficient and that the first and only

notices of the decisions of the commissioner that nothing was due to that city from the 1942 and 1943 taxes were his letters of August 9, 1944.

The letters of November 27, 1942, and November 22, 1943, to the assessors and the city treasurer, even if read with the letter of November 20, 1942, from the State treasurer, did not comply with G. L. (Ter. Ed.) c. 58, § 25, as amended. The letter of the State treasurer made no mention whatever of the 1942 tax. The letters of November 27, 1942, and November 22, 1943, from the commissioner did not in terms or by reasonable inference state that he had determined that the city was not entitled to any part of the 1942 or 1943 tax. On the other hand, the statement that the city was credited with the "following amounts received from taxes collected in 1942 and previous years" fairly indicates that some part of the 1942 tax was credited to the city. The letters of the commissioner are not wholly consistent with the letter of the State treasurer. In the next place, the lump sum stated by the commissioner was the city's share from the 1942 tax and the taxes for previous years. The number of years included in the phrase "previous years" is not disclosed and, whatever their number, the amount due for each year is not segregated or stated. These letters are not merely lacking in details but they utterly fail to furnish any definite and particular information as to what amount, if any, the commissioner had determined was due to the city from the 1942 or 1943 tax. Notices required by law or by contract to be given by one party to the other in order to establish rights or obligations must state with reasonable certainty the essential facts required by law or by contract, as the case may be. *Fitchburg Railroad* v. *Fitchburg,* 121 Mass. 132. *Shea* v. *Lowell,* 132 Mass. 187. *Wilson* v. *Crooker,* 145 Mass. 571. *Carver* v. *Taunton,* 152 Mass. 484. *Boston* v. *Acton,* 167 Mass. 579. *Loanes* v. *Gast,* 216 Mass. 197. *DePrizio* v. *F. W. Woolworth Co.* 291 Mass. 143. *Pecorelli* v. *Worcester,* 307 Mass. 425. *Bacon* v. *Paradise,* 318 Mass. 649.

The commissioner points out that under G. L. (Ter. Ed.) c. 58, § 25, as amended, he is required only to "ascertain

and determine the amount due to each town" from the proceeds of three different taxes collected by him, to certify "the amount as determined" to the State treasurer and to notify the treasurer of each town thereof, and that he complies with this statute by stating a single amount as due from the proceeds of these three taxes. This contention is based upon the first sentence of this statute, but that sentence must be construed with the last sentence, which provides for an appeal from any decision of the commissioner with reference to the corporate franchise tax. The legislative intent is to be ascertained from all the terms of a statute, giving to each part its appropriate effect and without emphasizing one part at the expense of another, so that together they all make an effectual piece of legislation in harmony with common sense and sound reason. *Tilton* v. *Haverhill*, 311 Mass. 572. *Commissioner of Corporations & Taxation* v. *Chilton Club*, 318 Mass. 285. The last sentence of the statute selects the corporate franchise tax alone, and specifies as to that particular tax that the decision of the commissioner shall be subject to an appeal. The right to appeal would be of little value unless the decision of the commissioner with reference to the corporate franchise tax appears upon the face of the notice sent to the treasurer of the town or city. Certainly no one could tell from a lump sum alone what, if anything, is included therein from the proceeds of a particular tax.

The notices given on November 27, 1942, and November 22, 1943, were insufficient, and the board was right in finding that the city treasurer was not notified of the decision of the commissioner that the city was not entitled to share in the proceeds of the 1942 and 1943 taxes paid by the two electric light companies until he received the notices of August 9, 1944, from the commissioner. *Brown* v. *Winthrop*, 275 Mass. 43, 46. *DePrizio* v. *F. W. Woolworth Co.* 291 Mass. 143. *King* v. *Boston*, 300 Mass. 377.

The United Electric Light Company was incorporated "for the purpose of furnishing light and power by electricity and heat," and the Western Massachusetts Electric Company with which it was merged on January 1, 1943, was

incorporated for a similar purpose. The former in 1942 sold fifty-six per cent of its electricity for power and the remainder for light, but the revenue received from the sales for light was sixty-eight per cent of its entire revenue.

The commissioner contends that both of these companies were power and not electric light companies within the meaning of G. L. (Ter. Ed.) c. 58, § 24, as amended. Section 24, which originated in St. 1916, c. 299, § 2, was enacted as a result of a recommendation of a special commission on taxation which was created by Res. 1915, c. 134 (Legislative Document, House 1700, of 1916, page 22), that the corporate franchise taxes received from gas, electric light and water companies should not be distributed in accordance with the residence of the stockholders but should be paid to the municipalities in which these companies did business. Nothing appears in that report or in said c. 299, § 2, indicating that an electric light company which sold electricity for power was not to be regarded as an electric light company. It was a matter of common knowledge that electric light companies were furnishing electricity for power; and although the amounts furnished for this purpose have greatly increased, especially with reference to ordinary household equipment, so that it is highly improbable that there is a single electric light company furnishing electricity for illumination which does not also furnish electricity for such purposes as operating a radio, a toaster, a refrigerator or some other household article, and although this § 2 has been amended, see G. L. (Ter. Ed.) c. 58, § 24, as amended by St. 1933, c. 254, § 23, the phrase "electric light . . . companies" has remained unchanged, and this must be taken to mean that the Legislature was satisfied that this phrase included a company that was distributing electric energy not only for the purpose of illumination but also for power. *Welch* v. *Commissioner of Corporations & Taxation*, 309 Mass. 293, 299–300. To give the phrase the meaning contended for by the commissioner would be to deprive the statute of the principal beneficent purpose for which it was enacted, and such a result is not to be readily attributed to the legislative branch of the gov-

ernment. *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 583. Indeed, the commissioner for years prior to 1942 had collected franchise taxes from similar companies and had distributed them to the cities and towns in accordance with said § 24. This is evidence of persuasive weight that the taxing department of the Commonwealth had considered these companies as electric light companies. *First National Bank* v. *Commissioner of Corporations & Taxation,* 274 Mass. 583. *Powers's Case,* 275 Mass. 515. *DeBlois* v. *Commissioner of Corporations & Taxation,* 276 Mass. 437. *Commissioner of Corporations & Taxation* v. *Dalton,* 304 Mass. 147. *Pocket Veto Case,* 279 U. S. 655. *Louisville & Nashville Railroad* v. *United States,* 282 U. S. 740, 757. *Driscoll* v. *Edison Light & Power Co.* 307 U. S. 104.

A brief reference to the statutes governing companies selling electricity for light and power demonstrates that they were commonly known as electric light companies. See for instance St. 1887, c. 382; St. 1890, c. 371; St. 1891, c. 351; St. 1903, c. 164. The words "electric light company" were defined by St. 1908, c. 529, as "any corporation organized . . . for the purpose of making or selling electricity only for light, heat or power and actually engaged in that business." When the statutes regulating the manufacture and sale of gas and electricity were codified by St. 1914, c. 742, the words "electric company" were substituted for the words "electric light company," and were defined as "a corporation organized under the laws of this commonwealth for the purpose of making by means of water power, steam power or otherwise and selling, or distributing and selling, electricity within this commonwealth, or authorized by special act so to do." § 1. This definition, with the addition of the words "even though subsequently authorized to make or sell gas," now appears in § 1 of G. L. (Ter. Ed.) c. 164. We find nothing in these various statutes, in so far as they deal with the regulation of the manufacture and sale of electricity by private corporations, that suggests that a company supplying the public with electricity for light is to be distinguished from a company selling electricity for both light and power. The enactment of St. 1916,

c. 299, § 2, as now appearing in G. L. (Ter. Ed.) c. 58, § 24, as amended, within two years after the present definition of electric companies first appeared in St. 1914, c. 742, § 1, indicates that in using the phrase "electric light . . . companies" in the 1916 statute the Legislature did not mean a corporation different from that defined in St. 1914, c. 742. Indeed, as late as 1934 the Legislature provided that "electric light" companies should annually file a statement of the number of its shares held by nonresidents and the number held by residents of the Commonwealth. G. L. (Ter. Ed.) c. 63, § 53, as amended by St. 1934, c. 323, § 6. The words "electric company" and "electric light company" were assumed to have the same significance in dealing with the power of the Legislature to compel a company to furnish without charge electric bulbs to its customers. *Opinion of the Justices*, 300 Mass. 591. We hold that these two companies are electric light companies within G. L. (Ter. Ed.) c. 58, § 24, as amended, and that the proceeds of the corporate franchise taxes paid by them were to be distributed to the city of Springfield in accordance with said section.

The final contentions of the commissioner are that the Western Massachusetts Companies, a voluntary association holding all the stock of these two companies, was a partnership and not a trust; that the partners were the owners of this stock; that, as there was no evidence that they were residents of this Commonwealth, they must be assumed to be nonresidents; and that, consequently, the city is not entitled to share in the corporate franchise taxes paid by the companies. The declaration of trust by which it was formed vested the legal title to all its property, with some exceptions not now material, in the trustees who were to manage and control its affairs. The trustees were authorized to acquire securities of gas and electric companies organized under the laws of this Commonwealth, to sell the whole or any part of the trust estate as they might in their uncontrolled discretion determine, and to appoint the officers and employees and fix their compensation. The holders of the transferable certificates or shares were to meet annually to elect trustees, the number of which might be increased but

not decreased below nine persons, and to vote upon the issuance of shares, but they were to have no power to control the actions of the trustees and were not to be held liable for any act of the trustees, officers, agents or representatives of the association. The declaration and payment of dividends rested in the discretion of the trustees. The trust was not to terminate by the death of a trustee or shareholder, but the trust was to continue for seventy-five years unless sooner terminated by the vote of two thirds of the outstanding shares. No shareholder was to have any interest in the specific property of the trust estate or any right to a division or partition thereof. The indenture created a trust and not a partnership. *Mayo* v. *Moritz*, 151 Mass. 481. *Williams* v. *Milton*, 215 Mass. 1. *Greco* v. *Hubbard*, 252 Mass. 37. *Larson* v. *Sylvester*, 282 Mass. 352. *Downey Co.* v. *Whistler*, 284 Mass. 461. *Dolben* v. *Gleason*, 292 Mass. 511.

It is urged by the commissioner that, even if the legal title to the shares is held by trustees, the beneficiaries and not the trustees must be regarded as the shareholders in determining the distribution of the proceeds of the tax. That contention would have to be sustained if it were made at a time when the statutes provided that a city or town where the beneficiary resided should be credited on account of the stock held in trust for the beneficiary. Our inquiry is whether any statute now makes such a provision.

One of the purposes of the corporate franchise tax, which has continued since the enactment of St. 1864, c. 208, was to prevent the evasion of taxes by the nonresident holders of stock, and this was accomplished by eliminating a direct tax upon the shares and substituting an excise upon the corporation. In order to reimburse the cities and towns for the loss resulting from the abolition of a property tax upon the shares, it was provided that they should share in the distribution of the new excise tax collected by the Commonwealth in the same proportion as if they had been permitted to assess the tax on the shares, and the various cities and towns were to share in the proceeds in proportion to the number of shares held by its residents, but the shares held in trust were to be credited to the cities or towns in which

the beneficiaries resided. This was the method of assessing personal property held in trust at the time of the enactment of St. 1864, c. 208. See Gen. Sts. c. 11, § 12, Fourth and Fifth. Statute 1864, c. 208, § 8, recognized this method of assessing the tax on shares at the time of its adoption, and provided as to stock held in trust that "the amount of stock so held shall be credited and paid to the towns where the stock would have been taxed, under the provisions of law contained in the fourth and fifth divisions of section twelve of chapter eleven of the General Statutes." The changes made by St. 1864 upon the previous method of a direct tax on the shares, the basis and effect of the excise tax upon corporations, and the application of the tax to certain corporations have been frequently stated in our decisions. *Oliver* v. *Washington Mills,* 11 Allen, 268. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298. *Worcester* v. *Board of Appeal,* 184 Mass. 460. *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674. *United Shoe Machinery Corp.* v. *Gale Shoe Manuf. Co.* 314 Mass. 142, 157.

The proportionate share of the proceeds of the tax which was represented by the shares held by nonresidents has always been retained by the Commonwealth. The remainder of the tax originally was distributed to the cities and towns in accordance with the number of shares owned by their residents and also with the number of shares held in trust for beneficiaries who resided therein. The basis for the distribution of corporate franchise taxes among the cities and towns in accordance with the domicil of the holders of the stock and of the beneficiaries of stock held in trust was gradually changed to the situs of the corporation — see St. 1908, c. 614; St. 1910, c. 456; St. 1919, c. 355, §§ 13, 31; G. L. (Ter. Ed.) c. 58, § 26 — and the repeal of G. L. (Ter. Ed.) c. 58, § 26, by St. 1934, c. 323, § 1, completed the transition. It may also be noted that c. 323, § 1, also repealed G. L. (Ter. Ed.) c. 58, §§ 21, 23, which had provided for distribution among cities and towns of the taxes upon ordinary business corporations and on telephone, telegraph and railroad corporations on the basis of residence

of the owners and beneficial owners of stock in such companies.

It must be observed that the present system of distribution of the proceeds of corporate franchise taxes paid by gas, electric light and water companies, which originated in St. 1916, c. 299, § 2, is upon the basis of the situs of the corporation so far as the distribution between cities and towns is concerned, and the Commonwealth retains that portion of the tax represented by the shares held by non-residents of the Commonwealth. There is no provision in this system for a determination of division of the proceeds of the tax between the Commonwealth and the cities or towns based in any way upon the fact that the legal title to some of the shares might be held in trust. The previous statutory provisions for taxing personal property held in trust are not now applicable to the distribution of the taxes in question. Indeed, the method for the assessment of tangible personal property held in trust has been greatly changed since the enactment of St. 1909, c. 490, Part I, § 23, Fourth, Fifth, Sixth and Seventh, upon which the commissioner mainly relies. See St. 1918, c. 129; G. L. (Ter. Ed.) c. 59, § 5, Thirty-third, and c. 59, § 18.

That the trustees should be regarded as the owners of the stock for the purpose of determining the apportionment of the tax between the Commonwealth and the city is further evidenced by the amendment of G. L. (Ter. Ed.) c. 63, § 53, by St. 1934, c. 323, § 6, which requires an electric light company upon the request of the commissioner to furnish annually a list of the names and residences of its stockholders. This statute does not require a company, even if it were possible to do so, to furnish a list of all persons who might have an equitable interest in any of its shares.

We are of opinion that the trustees of the Western Massachusetts Companies must for the purposes of G. L. (Ter. Ed.) c. 58, § 24, as amended, be held to be the legal owners of the shares of stock of these two electric light companies in apportioning the proceeds of the corporate franchise taxes between the Commonwealth and the city, and that the share of the city in these taxes is to be determined by

the business situs of these companies and not by the residence in the city of any beneficiary to whom the income of the shares might be payable.  On the other hand, the share to be retained by the Commonwealth is to be determined by the number of shares owned by nonresidents of the Commonwealth.

One of the fifteen trustees of the Western Massachusetts Companies was a nonresident.  Other than for the purpose of being sued, G. L. (Ter. Ed.) c. 182, §§ 1, 6, the trust was not a legal entity.  *Larson* v. *Sylvester,* 282 Mass. 352. *Peterson* v. *Hopson,* 306 Mass. 597.  The title of these trustees to the stock of the two electric companies was joint. It was in the board of trustees as an entirety.  A single trustee could not convey to a third person all this stock or an undivided share in any of it.  All would have to join in a conveyance unless the indenture made a different provision. *Austin* v. *Shaw,* 10 Allen, 552.  *Boston* v. *Robbins,* 126 Mass. 384.  *Morville* v. *Fowle,* 144 Mass. 109.  *Horowitz* v. *State Street Trust Co.* 283 Mass. 53.  But whatever limitations might have attached to the interest of the nonresident trustee in the stock, the Commonwealth was entitled to retain from the proceeds of the corporate franchise taxes an amount proportionate to the number of shares owned by this trustee if he was a nonresident owner of the shares within the meaning of G. L. (Ter. Ed.) c. 58, § 24, as amended.  The term "owner" is one of flexible meaning depending upon the setting within which it is employed. *Keith* v. *Maguire,* 170 Mass. 210, 212.  *Downey* v. *Bay State Street Railway,* 225 Mass. 281, 284.  *Animal Rescue League of Boston* v. *Assessors of Bourne,* 310 Mass. 330, 333.  It commonly denotes the holder of the legal title and includes one holding the title in trust.  *Hawkins* v. *County Commissioners of Berkshire,* 2 Allen, 254.  *Richardson* v. *Boston,* 148 Mass. 508.  *Shepard* v. *Creamer,* 160 Mass. 496.  *Falardeau* v. *Boston Art Students' Association,* 182 Mass. 405. *Dunham* v. *Lowell,* 200 Mass. 468.  *Gardiner* v. *Rogers,* 267 Mass. 274.  *Lowell* v. *Lowell Building Corp.* 309 Mass. 165.

In the computation of the amounts of the proceeds of the taxes to be retained by the Commonwealth we think

that it is entitled to be credited on account of the stock held by the nonresident trustee. The apportionment made by the board must be reduced one fifteenth and the distributive shares due to the city are $41,673.72 and $34,340.17 for the corporate franchise taxes paid in 1942 and 1943 respectively, and these amounts must be paid to the city with costs.

*So ordered.*