GLADYS S. MINKIN, trustee,[1] vs. COMMISSIONER OF REVENUE.

No. 94-P-125.

Suffolk. October 11, 1995. - April 29, 1996.

Present: BROWN, GREENBERG, & FLANNERY, JJ.

Further appellate review granted, 423 Mass. 1106 (1996).

*Taxation,* Business trust, Abatement. *Trust,* Business trust.

Real estate investment trusts established during the 1960's and taxed upon
    liquidation in 1984 under G. L. c. 62, §§ 1 (*j*) and 8, were entitled to a
    stepped-up cost basis on the fifty per cent of the shares as to which in-
    heritance taxes on their increased value had been paid earlier as part of
    the estate of one of the two trustees, where the trusts were not suf-
    ficiently endowed, in the circumstances, with a separate legal identity
    from the sole remaining beneficial owner and trustee who had inherited
    those shares. [346-349]

APPEAL from a decision of the Appellate Tax Board.

*Marc A. Elfman* for the taxpayers.

*Robert J. Munnelly, Jr.,* Assistant Attorney General, for
the Commissioner of Revenue.

GREENBERG, J. In a sense, this case presents a variation on
themes expressed in two older cases, *Peterson* v. *Hopson,* 306
Mass. 597, 612 (1940), and *Dolben* v. *Gleason,* 292 Mass. 511
(1935), namely, whether a Massachusetts business trust (see
G. L. c. 182, §§ 1 et seq.)[2] is a legal entity apart from its
shareholders. Here, the taxpayers' (the four trusts, collec-
tively) appeal to the Appellate Tax Board (board) was denied
because the board, without a hearing, decided that the Com-
missioner of Revenue (commissioner) had rightly treated the

[1]Of Minkin West Roxbury Trust, Quincy Realty Trust, National Nurs-
ing Home Realty Trust, and Minkin Forest Hills Trust. Whenever the term
"taxpayers" is used in this opinion, it refers to the trusts.

[2]For a general discussion of business trusts, see 3 Cavitch, Business
Organizations § 43 (1992 ed.); Annot., Modern Status of the Massachusetts
or Business Trust, 88 A.L.R. 3d 704 (1978); 13 Am. Jur. 2d Business
Trusts (1964); 12A C.J.S. Business Trusts (1980).

trusts as separate taxable entities. From that determination and the denial of their applications for abatement of the taxes imposed, the taxpayers appeal. We reverse the board's decision.

In summary, these are the salient facts (as stipulated by the parties) considered by the board. During the 1960s, Isadore Minkin and his wife, Gladys, acquired four properties, used as nursing homes, from which they earned substantial income. The four properties were placed in four separate business trusts. Until 1983, Gladys and Isadore each owned fifty per cent of the beneficial interest of each trust, represented by transferable shares. When Isadore died in 1983, Gladys inherited his shares and became one hundred per cent beneficial owner as well as sole trustee of the four trusts. When Isadore's estate was settled in 1984, the estate paid inheritance taxes on the fair market value of his fifty per cent interest in each trust. For purposes of valuation of Isadore's shares, the date of acquisition of the properties was used as a starting point.

Gladys liquidated the four trusts later in 1984. Each trust then filed Federal and State income tax returns, taking advantage of tax free distribution of corporate income under 26 U.S.C. § 337 (1982). The commissioner challenged the treatment of the business trusts as corporations for purposes of State taxation, see G. L. c. 62, §§ 1(j) and 8, and assessed additional taxes. As required by G. L. c. 62C, § 37 (1980), the taxpayers paid the taxes and filed timely applications for abatement.

The taxpayers concede that, as the commissioner contends, the trusts are taxed as "resident natural persons," not corporations, under G. L. c. 62, §§ 1(j) and 8. However, they claim abatement of a portion of the additional taxes on the ground that Isadore's estate had already paid an inheritance tax on the appreciation of his fifty per cent interest calculated from the 1960s to 1984. Therefore, they argue, the trusts were entitled to a "stepped-up" cost basis for those assets that had been includable in Isadore's estate. Accordingly, the taxpayers claim that the board must use the fair market value

of Isadore's fifty per cent interest in 1984 as a basis to establish the trusts' tax on the four properties upon liquidation.[3]

We are asked to make a determination on an issue that involves only a question of law. See *Koch* v. *Commissioner of Rev.*, 33 Mass. App. Ct. 707, 712 (1992), rev'd on other grounds, 416 Mass. 540 (1993); G. L. c. 58A, § 13, as appearing in St. 1973, c. 1114, § 5. We start with the proposition that "the basis of property in the hands of a person acquiring the property from a decedent . . . shall . . . be . . . the fair market value of the property at the date of the decedent's death." 26 U.S.C. § 1014(a)(1) (1982).[4] Gladys inherited her husband's one-half interest in the trusts upon his death. As both parties agree, she would have been entitled to the benefit of the stepped-up basis if, for example, she had sold the shares and become subject to taxation prior to liquidation. However, once the trusts were liquidated, the trusts, not Gladys, became subject to taxation on the proceeds of the trust property sold. The question remains, then, whether the trusts are sufficiently endowed with a legal personality apart from the shareholder that they are ineligible to benefit from the stepped-up basis.

Trusts with transferable shares are hybrid business organizations that are neither partnerships nor corporations. *Larson* v. *Sylvester*, 282 Mass. 352, 357-358 (1933). A business trust is excused from some of the filings and formalities required by G. L. c. 156B, and it allows the organizers a measure of limited liability not available to partnerships. See G. L. c. 182, §§ 1 et seq. The legal treatment of trusts with transferable shares may differ depending upon the context in which an issue is raised, and on the facts of the particular case. For example, in some jurisdictions, including Massachusetts, a business trust is treated as a corporation for the purpose of bestowing limited liability on its shareholders. *Greco* v. *Hubbard*, 252 Mass. 37, 43 (1925). However, courts will look behind formal labels and make a case-by-case deter-

---

[3]Since Gladys liquidated the trusts soon after the settlement of Isadore's estate, this would essentially mean that one-half of the trusts' properties would not be taxed.

[4]General Laws c. 62, § 6F, incorporated the provisions of 26 U.S.C. § 1014 into Massachusetts law. Although § 6F was not enacted until 1986, it is irrelevant to the outcome of this case, and the parties do not argue to the contrary.

mination of whether the organization is a "true" business trust with quasi corporate features. The test, called the "control test," is generally formulated as whether, under the declaration of trust, the trustees "act as principals and are free from the control of the certificate holders." *Frost* v. *Thompson*, 219 Mass. 360, 365 (1914). Where the shareholders retain excessive control over the trustees, the business trust fails and shareholders will not be entitled to limited liability. *First Natl. Bank of New Bedford* v. *Chartier*, 305 Mass. 316, 321 (1940).

For purposes of Federal taxation, a business trust may be considered either an association taxable as a corporation, 26 U.S.C. § 7701(a)(3) (1982), or a partnership, "if, applying the principles set forth in [26 C.F.R.] §§ 301.7701-2 and 301.7701-3, the organization more nearly resembles an association or a partnership than a[n] [ordinary] trust." 26 C.F.R. § 301.7701-4(b) (1984). A business trust qualifies as an association if it possesses certain attributes, including associates, a business purpose, centralized management, limited liability, continuity of existence, and free transferability of interests. 26 C.F.R. § 301.7701-2(a)(1) (1984). *Morrissey* v. *Commissioner of Internal Rev.*, 296 U.S. 344, 359 (1935).

In view of the foregoing authorities, we think the facts, as stipulated by the parties, require treating the trusts as if they had no separate legal identity apart from their sole trustee and beneficiary. We are handicapped by not having been furnished with the instruments establishing the trusts, details of the operations of the business, or other information that would shed light on either the "control test" or the *Morrissey* test. However, from the undisputed fact that there is a parallel identity of trusteeship and ownership in connection with the holding of title to real estate by a trustee, it may be inferred that the trustee is an agent for her own convenience rather than a trustee in the more familiar fiduciary sense. See *Williams* v. *Milton*, 215 Mass. 1, 6 (1913). We may conclude from the probate and tax contexts of the case that 26 U.S.C. § 1014 encompasses the case of a trustee who is trustee for herself in the conduct of business affairs.

We recognize that identity of ownership and trusteeship may only be a temporary situation, and that the trust declaration itself may not otherwise provide for control by the beneficiary(ies) over the trustee(s). However, other considerations

further incline us to conclude that the trusts are entitled to the same step-up in cost basis which Gladys would have been entitled to under 26 U.S.C. § 1014.

Unlike a corporation, the transferable shares of a closely held business trust have no identity or value outside that of the assets of the trust. See *State Tax Commn.* v. *Colbert,* 344 Mass. 494, 497 (1962).[5] As such, liquidation of the trusts amounts to essentially the same transaction as a sale of all the shares. Ownership of the trusts' assets is transferred, and the cash distribution which the shareholders receive upon liquidation is precisely equal to that which they would receive upon sale of their shares. It would be anomalous, then, to arrive at a different tax outcome for the former transaction than for the latter. If, as all parties agree, Gladys might advance to 1984 as a basis for transferring her shares, the trusts, which as discussed had become pass-through vehicles, were entitled to the same stepped-up basis upon liquidation.

The decision of the Appellate Tax Board is reversed and these matters are remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[5]It appears that the commissioner agrees with this view. Upon Isadore's death, his trust shares were, for estate tax purposes, given a value reflecting only the fair market value of the real estate held in the trusts.