LIPEZ, Circuit Judge
(Dissenting).
Paragraph 5 of the surety bond provides in relevant part:
If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner.
On August 24, 2000, Greenfield notified Seaboard of ICC’s default and termination, and agreed to pay the balance of the contract price to Seaboard or to a replacement contractor pursuant to Paragraphs 3.2 and 3.3 of the bond. Thus, after August 24, 2000, Seaboard was required to “proceed as provided in Paragraph 4 with reasonable promptness.” If it did not, Greenfield was entitled to deliver the “additional written notice” under Paragraph 5, beginning the 15 day period before Seaboard would be deemed in default.
As the majority recognizes, Massachusetts law governs the provisions of the surety bond. In Massachusetts, “[njotices required by law or by contract to be given by one party to the other in order to establish rights or obligations must state with reasonable certainty the essential facts required by law or by contract, as the case may be.” Comm’n of Corps. & Taxation v. Springfield, 321 Mass. 31, 35, 71 N.E.2d 593 (1947). See also Carey v. Planning Bd. of Revere, 335 Mass. 746, 748, 141 N.E.2d 895 (1957) (“[The] form [of the notice] is not important but it must *225 convey with reasonable certainty the information reasonably needed to serve the statutory purpose.”). In this case, the essential information required by Paragraph 5 was a “demand[] that the Surety perform its obligations under [the] Bond.” Thus, our task is to determine whether a reasonable jury could find that Greenfield’s communications to Seaboard constituted an “additional written notice” that, with reasonable certainty, “demand[ed] that the Surety perform its obligations under [the] Bond.”
In my view, there are several communications between Greenfield and Seaboard that a reasonable jury might find meet this requirement. As early as September 26, 2000, Greenfield had formally asked Seaboard to perform its obligations under the bond and had laid out a timetable for Seaboard’s decision:
Lastly, [Greenfield] is formally asking the surety to undertake to perform and complete the construction contract itself, or through its agents or independent contractors as set forth in the surety contract, paragraph 4.2. Please be further advised that [Greenfield] believes that they will require a decision by the surety no later than October 20, 2000 so that work may begin in earnest to move forward on the project by November 4, 2000.
A November 15, 2000, letter again called on Seaboard to decide whether it would complete the project:
[Greenfield] must now decide if it will complete the project. It is still [Greenfield’s] preference to have Seaboard complete. Seaboard has been aware of the problems with ICC for several years and Seaboard has had two and one half months since ICC’s termination to assess and determine its position on completion. The time for Seaboard to make a decision is here.
The November 15th letter concluded by asking that “Seaboard provide [Greenfield] with an indication of its intentions by November 20, 2000,” setting yet another deadline for Seaboard’s decision.
Finally, a November 22, 2000, letter set a third deadline and clearly indicated that Greenfield was prepared to pursue completion by another contractor if Seaboard did not perform its obligations under the bond:
Time is truly of the essence in negotiating a takeover agreement and commencing the completion of the work. [Greenfield] has targeted December 1, 2000 as the date by which work on the completion of the contract should commence. [Greenfield] is prepared to do what is necessary to meet that date. If the takeover agreement cannot be reached, [Greenfield] will be compelled to proceed with its other completion options.
Each of these letters asked Seaboard to either perform its obligations under the bond or allow Greenfield to pursue other options. In my view, a reasonable jury could find that these letters constituted an “additional written notice” that, with reasonable certainty, “demand[ed] that the Surety perform its obligations under the Bond.”
The majority reasons that “[a]s Greenfield’s letters to Seaboard did not alert Seaboard to a presumed default, nor indicate that Seaboard was in material breach, nor refer to Paragraph 5, nor warn that Seaboard would be deemed in default in fifteen days, no reasonable jury could find that Greenfield’s letters ‘convey[ed] with reasonable certainty the information reasonably needed’ to serve the purpose of Paragraph 5’s notice requirement.” Paragraph 5, however, does not require that Greenfield’s notice contain any of these provisions. It merely requires a “de-mande ] that the Surety perform its obligations under the Bond.” If the parties *226 had wished to require a more comprehensive notice — including explicit reference to Paragraph 5 and a recitation of the consequences of Greenfield’s notice — they could have altered Paragraph 5’s requirements. They did not do so, and it is not our province to read more stringent requirements into that provision.
Moreover, Greenfield was not required by principles of contract law to educate Seaboard as to the consequences of Greenfield’s demand that Seaboard perform its obligations under the bond. “[U]nder Massachusetts law, ‘one who signs a writing that is designed to serve as a legal document ... is presumed to know its contents.’ ” Salois v. Dime Sav. Bank, 128 F.3d 20, 26 n. 10 (1st Cir.1997) (quoting Hull v. Attleboro Sav. Bank, 33 Mass.App.Ct. 18, 24, 596 N.E.2d 358 (1992)). Thus, we must presume that Seaboard understood Paragraph 5’s requirements, including that it would be deemed in default 15 days after receiving additional written notice demanding that it perform its obligations under the bond. It was Seaboard’s responsibility to protect its rights by acting within its 15 day window of opportunity. Greenfield’s only duty was to provide the notice required by Paragraph 5 in compliance with the Massachusetts “reasonable certainty” standard, regardless of whether Seaboard recognized that the notice formally triggered the terms of Paragraph 5. See, e.g., Univ. Emergency Med. Found. v. Rapier Inves., Ltd., 197 F.3d 18, 21 (1st Cir.1999) (holding that the parties to a contract may specify the manner of sufficient termination notice in the terms of the contract); Westmoreland v. Gen. Acc. Fire & Life Assur. Corp., 144 Conn. 265, 270, 129 A.2d 623 (1957) (“It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy. When they do so contract, the giving of a notice by the method contracted for is sufficient whether it results in actual notice or not.”) (collecting cases).
Greenfield and Seaboard have been engaged in a long and bitter dispute over their respective obligations under the surety contract. The financial stakes are considerable for both parties. We should not resolve this ease with a legal ruling that rewrites the content of the notice required by Paragraph 5 of the bond. Rather, whether Greenfield’s multiple letters constituted an adequate “demandf] that the Surety perform its obligations under [the] Bond” is a quintessential jury question. I would therefore vacate the entry of summary judgment and remand to the district court so that this issue could be resolved by the appropriate fact finder.
I respectfully dissent.