Harvey Payne, Inc. *v.* Slate Co.

HARVEY PAYNE, INC. *vs.* THE SLATE COMPANY & others.[1]

Suffolk.    December 5, 1962. — February 27, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Taxation,* Cigarette tax.    *Words,* "Invoice cost," "Cost to the wholesaler."

The State cigarette tax imposed by G. L. c. 64C, as amended, is not a
   part of the "cost [of cigarettes] to the wholesaler" as defined in § 13 (c),
   and, in computing the minimum wholesale price of cigarettes, a whole-
   saler should apply the percentage markups prescribed by § 13 (c) only
   to the price paid by him to the manufacturer for the cigarettes and in-
   clude the tax in his invoice as a separate item wholly unrelated to the
   markups; he should not add the tax to such price and then apply the
   percentage markups to the aggregate.

BILL IN EQUITY filed in the Superior Court on June 10,
1960.

The suit was reported by *Swift,* J.

*Rhodes G. Lockwood* for the plaintiff.

*Herbert A. Horgan, Jr.,* for The Slate Company.

*Edward J. McCormack, Jr.,* Attorney General, *& Herbert
E. Tucker, Jr.,* Assistant Attorney General, for the State
Tax Commission, submitted a brief.

CUTTER, J.    The plaintiff (Payne) seeks a declaration
under G. L. c. 231A to determine whether, pursuant to G. L.
c. 64C,[2] §§ 12, 13, and 14, "in computing his minimum price

----

[1] After the decision of this court in *Harvey Payne, Inc.* v. *Slate Co.* 342
Mass. 368, Payne amended its bill to join as defendants the members of the
State Tax Commission and also a corporation (Associated Greater Boston
Tobacco Retailers, Inc.) and three officers of an unincorporated association,
Massachusetts Association of Tobacco Distributors, each of whom is also the
chief executive officer of a licensed tobacco wholesaler.

[2] General Laws c. 64C, inserted by St. 1945, c. 547, § 1, deals with the ciga-
rette excise.    Pertinent provisions include: § 2 (as amended through St. 1956,
c. 90, § 1).    "'No person shall sell cigarettes or act as manufacturer, whole-
saler, . . . or retailer, in the commonwealth, unless licensed . . . .'"    § 6 (as
amended through St. 1960, c. 774, § 7).    "'Every licensee . . . other than . . .
a retailer shall . . . file with the commissioner . . . a return . . . stating the
number of cigarettes sold by such licensee in the commonwealth during the
preceding calendar month . . . .    Such licensee shall . . . pay to the commis-
sioner an excise equal to three mills for each cigarette so sold . . . provided,

for cigarettes, a wholesaler must first add the State cigarette excise . . . to the price paid by him to the manufacturer and then apply the 2% and ¾% markups provided by" §13 (c). In the Superior Court, the judge made findings of material facts, and reported the case without decision on the pleadings and findings.

Payne and the defendant The Slate Company (Slate) are corporations licensed as wholesalers under c. 64C and for many years have been in competition "for the business of cigarette retailers" in metropolitan Boston. Pursuant to § 25 (see fn. 2, *supra*) the Commissioner of Corporations and Taxation periodically issued rulings prescribing the method by which "cost to the wholesaler," as defined in G. L. c. 64C, § 13 (as amended through St. 1958, c. 633, §§ 1, 2),[3] should be computed for purposes of § 14. Until the

---

that cigarettes with respect to which the excise . . . has once been imposed . . . shall not be subject upon a subsequent sale to the excise . . . . [Then follow provisions, inserted by St. 1956, c. 720, § 1, authorizing compensation to wholesalers and others "for services rendered in compliance with this chapter."] . . . All cigarette taxes paid in pursuance of this chapter or of any general or special law shall conclusively be presumed to be a direct tax on the retail consumer, precollected for the purpose of convenience and facility only." This last sentence was added by St. 1960, c. 774, § 7. A similar provision had appeared in St. 1953, c. 246, § 13, St. 1955, c. 707, § 11, St. 1956, c. 354, § 11, St. 1957, c. 456, § 11, St. 1958, c. 457, § 1, and St. 1959, c. 31, § 10. § 12. "No person shall be permitted to sell cigarettes as 'loss-leaders' with intent to injure competitors or to destroy competition . . . ." § 14. "(a) It shall be unlawful for any retailer, with intent to injure competitors . . . to . . . sell at retail cigarettes at less than cost to the retailer, or for any wholesaler [with like intent] . . . to . . . sell at wholesale cigarettes at less than cost to the wholesaler." § 25 (as amended through St. 1953, c. 654, § 86). "The administration of this chapter is vested in the commissioner. All forms necessary and proper for the enforcement of this chapter shall, with the approval of the state tax commission, be prescribed and furnished by the commissioner. The state tax commission may prescribe regulations and rulings, not inconsistent with law, to carry into effect the provisions of this chapter, which regulations and rulings, when reasonably designed to carry out the intent and purpose of this chapter, shall be prima facie evidence of its proper interpretation." See *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370, fn. 1.

[3] Section 13, as so amended, reads in part: "(a) The term 'cost to the retailer' shall mean the invoice cost of the cigarettes to the retailer . . . less all trade discounts except customary discounts for cash; to which shall be added the cost of doing business by said retailer as evidenced by the standards and the methods of accounting regularly employed by him . . . ." (b), as amended through St. 1958, c. 633, § 1, "In the absence of proof of a lesser or higher cost of doing business by the retailer . . . [his] cost of doing business . . . shall be presumed to be twelve and four tenths per centum of the invoice cost of the cigarettes to the retailer . . . less all trade discounts except customary discounts for cash." (c) "The term 'cost to the wholesaler' shall mean the invoice cost of the cigarettes to the wholesaler . . . less all trade discounts

enactment of St. 1953, c. 654, reorganizing the Department
of Corporations and Taxation, the "method of computation
prescribed by the Commissioner . . . was to add the Massa-
chusetts cigarette excise tax to the price paid by the whole-
saler to the manufacturer and then apply to that sum
the wholesaler's markups of 2% and ¾% prescribed by"
§ 13 (c), see fn. 3.   The "State Tax Commission has issued
no regulation or ruling prescribing or utilizing a method of
computation.   However, since December, 1959, the Commis-
sioner . . . acting through the bureau of excises, has stated
orally that in computing his minimum price a wholesaler
may add the cigarette excise tax after he had applied the
prescribed markup to the invoice price paid by him to the
manufacturer. . . .   From the . . . enactment of chapter
64C in 1945 until December, 1959, the wholesalers of ciga-
rettes added the state cigarette excise tax to the manufac-
turers' invoice price as their usual practice upon the belief
that . . . [this] was required by the Commissioner. . . .
On December 9, 1959, . . . Slate . . . notified the Commis-
sioner . . . that . . . it intended to reduce its wholesale
selling price of cigarettes to the lowest legal limit and that
such price would be computed by applying the wholesaler's
markups to the manufacturers' invoice price before and not
after the addition of the State cigarette excise tax. . . .
Thereafter . . . Slate . . . sold cigarettes in accordance
with its announced intention, the reduction in price accom-
plished thereby amounting to approximately two cents per
carton."   In 1956, there was enacted an amendment of
c. 64C, § 6, to provide for reimbursing wholesalers for their
services in tax collection (see St. 1956, c. 720, § 1).   Statute
1953, c. 246, § 13, and later enactments, including St. 1956,

except customary discounts for cash; to which shall be added a wholesaler's
mark-up to cover in part the cost of doing business, which wholesaler's mark-up,
in the absence of proof of a lesser or higher cost of doing business by the said
wholesaler as evidenced by the standards and methods of accounting regularly
employed by him . . . shall be two per centum of said invoice cost of the
cigarettes to the wholesaler plus cartage to the retail outlet if performed or
paid for by the wholesaler, which cartage cost shall be deemed to be three
fourths of one per cent of the cost of the cigarettes to the wholesaler, unless
said wholesaler claims and proves a lower cartage cost . . . less all trade dis-
counts except customary discounts for cash."

c. 354, § 11, contained a provision (now found in c. 64C, § 6, see St. 1960, c. 774, § 7) that the Massachusetts cigarette taxes should "conclusively be presumed to be a direct tax on the retail consumer." See fn. 2, *supra*. The purpose of this latter "amendment was to make the amount of the Massachusetts cigarette excise tax included in the price paid by the consumer an allowable deduction for purposes of Federal income tax under the provisions of section 164 (c) of the Internal Revenue Code of 1954."

"The manufacturer's invoice price of cigarettes averages about $9.00 per one thousand cigarettes. . . . The invoice submitted by a wholesaler to a retailer in connection with the sale of cigarettes to the retailer includes the State cigarette excise tax."

Payne contends that, under c. 64C, even since the 1953 and later amendments, a wholesaler, in computing his price, must add the Massachusetts excise to the "manufacturer's invoice price" and then apply the prescribed percentage markups to the aggregate of these two items. Slate and the State Tax Commission, on the other hand, take the position that the wholesaler should add the excise after the application of his markup to the manufacturer's invoice price. Our own decisions furnish no definite answer to this controversy. See *Commissioner of Corps. & Taxn.* v. *Ryan,* 323 Mass. 154; *Westerly Tobacco Co.* v. *Huberman,* 333 Mass. 548; *Harvey Payne, Inc.* v. *Slate Co.* 342 Mass. 368, 370–371. Chapter 64C contains no provision defining the term, "invoice cost."

We are dealing with a somewhat ambiguous statute, which has received at different times somewhat different administrative interpretations. One interpretation, as has been stated, antedated the 1953 reorganization of the department and the 1953 and later statutory amendments. The later interpretation has been oral only, except for the commission's brief filed before us, and has not been embodied in official regulations. There were significant statutory changes in 1953 and thereafter. We entertain doubts whether the early administrative action was consistent with the general structure of c. 64C. All these considerations

Harvey Payne, Inc. *v.* Slate Co.

lead us to feel that this is not a case where substantial weight can be given to administrative interpretation. See *Allen* v. *Commissioner of Corps. & Taxn.* 272 Mass. 502, 509; *Second Bank–State St. Trust Co.* v. *State Tax Commn.* 337 Mass. 203, 211.[4]  We do not regard as significant the failure of the Legislature to pass a bill clarifying the situation. See 1961 Senate Bill No. 375; 1961 House Journal, p. 1234; 1961 Senate Journal, p. 652; *State Tax Commn.* v. *Gray,* 340 Mass. 535, 541–542. Cf. *Gordon* v. *State Tax Commn.* 335 Mass. 431, 437.

Chapter 64C, § 6, as amended, indicates to us that the scheme of the excise, at least since 1953, calls for collection of the excise from the consumer. Each vendor of cigarettes within the Commonwealth must be licensed. See § 2. Each licensee (other than a retailer or "an unclassified acquirer," a class of licensees with whom in this case we are not concerned) must file a return monthly showing "the number of cigarettes sold by such licensee . . . during the preceding . . . month" and must pay to the Commissioner an excise for each cigarette, unless an excise has previously been paid on that cigarette. See § 6, as amended, fn. 2. The provision makes the first vendor of a cigarette within the Commonwealth responsible for actual payment of the excise to the Commissioner. That vendor must collect the excise from his vendee, and each successive vendor must do likewise, until finally the excise is collected from the ultimate purchaser at retail. There is a declaration that the consumer pays the tax and this in essence means that three mills per cigarette of the total amount billed by each successive vendor within the Commonwealth is the excise. The price of the cigarette to any vendee (apart from the excise, but including the particular vendor's markup) can only be what is left after the excise is subtracted. The first licensed vendor within the Commonwealth is really acting as a compensated excise collection representative of the Commissioner.

[4] See also *State Tax Commn.* v. *John Hancock Mut. Life Ins. Co.* 341 Mass. 555, 565. Cf. *Burrage* v. *County of Bristol,* 210 Mass. 299, 301; *DeBlois* v. *Commissioner of Corps. & Taxn.* 276 Mass. 437, 440; *Commissioner of Corps. & Taxn.* v. *Springfield,* 321 Mass. 31, 38.

This fundamental structure of c. 64C sheds light on the meaning of the term "invoice cost" as used throughout § 13, as amended. The tax must be passed on to the consumer. Without regard to how a manufacturer or wholesaler makes up his invoices, the invoice cost to the purchaser is what the purchaser pays apart from the excise. The invoice is to be treated as if the excise had been billed as a separate item.

This has the effect of treating all licensees equally. For instance, a wholesaler who buys from an out of State manufacturer, who presumably will not have paid the excise, will add a markup computed on the same basis as that computed by one who buys from a manufacturer licensed in Massachusetts, who will state the excise as an item in the bill. This interpretation avoids a possible inequality of treatment which might present constitutional problems. See *Ferguson* v. *Commissioner of Corps. & Taxn.* 316 Mass. 318, 323–324; *Opinion of the Justices,* 341 Mass. 760, 785.

We recognize that the principal purpose of the 1953 amendment (now in § 6) clearly stating that the excise was "a direct tax on the retail consumer" was to avoid doubts with respect to whether the tax was a proper deduction from the consumer's gross income for purposes of Int. Rev. Code of 1954, 26 U. S. C. (1958) § 164 (c). See Rev. Rul. 54–132, 1954–1 C. B. 57, distinguishing I. T. 3670, 1944–1 C. B. 114. That purpose seems to us wholly consistent with our interpretation of c. 64C.[5]

A final decree is to be entered declaring that the excise imposed by G. L. c. 64C, as amended, is not a part of the "cost to the wholesaler" as defined in G. L. c. 64C, § 13 (c); that it must be included in a wholesaler's invoice as a separate item after, and wholly unrelated to, the markups prescribed by § 13 (c); and that it must be collected by the wholesaler and eventually from the ultimate consumer in addition to the price of the cigarettes themselves.

*So ordered.*

---

[5] We see no occasion for considering comparable excise statutes in other States, their administrative practices, or the rulings of the Internal Revenue Service with respect to them.