Original
No. 6527

NEW HAMPSHIRE RETAIL GROCERS ASSOCIATION

v.

STATE TAX COMMISSION

September 28, 1973

*McLane, Graf, Greene & Brown* and *Michael P. Hall (Mr. Stanley M. Brown* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Charles G. Cleaveland,* attorney (*Mr. Cleaveland* orally), for the defendant.

LAMPRON, J. Petition for a writ of prohibition seeking reversal of the commission's interpretation of RSA ch. 358 (Unfair Sales Act) issued on September 13, 1972, pertaining to the minimum price at which cigarettes may be sold. Hearing before a Judicial Referee *(Amos N. Blandin, Jr.)* who made various findings of fact and rulings of law including a finding that the commission's interpretation of the Act was contrary to its purpose and intent. The referee transferred without ruling the propriety of the remedy sought and the correctness of the commission's interpretation of RSA ch. 358, the latter being the central issue to be decided. The referee also transferred without ruling the question whether the commission's action has violated the constitutional right to equal protection of the laws of the retailers who sell cigarettes.

The commission contends that neither a writ of prohibition nor of mandamus is the proper remedy because the issuance of an interpretation of the Act is within the administrative powers the legislature granted to the commission. It suggests that certiorari is the proper remedy to correct the commission's alleged erroneous interpretation. "[I]n this State it is unimportant whether the process be called *certiorari,* or be given some other Latin or English name." *Dinsmore v. Mayor and Aldermen,* 76 N.H. 187, 190, 81 A. 533, 535 (1911). The parties are entitled under the established practice in this State to the most convenient procedure for the settlement of their controversy. *State v. Harkaway,* 105 N.H. 42, 46, 192 A.2d 619, 622 (1963). We hold that the present controversy can be properly adjudicated in the present proceeding. K. Davis, Administrative Law Text § 24.07 (3d ed. 1972).

RSA 358:1 reads in part as follows: "The term 'cost to the retailer' shall mean the invoice cost of the merchandise to the retailer, or the replacement cost of the merchandise to the retailer . . . whichever is lower . . . to which shall be added (1) freight charges not otherwise included in the cost of the merchandise (2) cartage to the retail outlet if performed or paid for by the retailer . . . (3) a mark-up to cover in part the cost of doing business, which mark-up, in the absence of proof of a lesser cost, shall be six per cent of the total cost at the retail outlet."

RSA ch. 78 which imposes on tobacco products a direct tax upon the consumer at retail (§ 7-a) provides that it be precollected by, among others, the wholesaler who affixes stamps purchased from the State to the package before it is sold to the retailer. RSA 78:7 (Supp. 1972), 9. The controversy centers on whether or not the tobacco tax should be included in the retailer's cost for the purpose of figuring the six percent markup provided for by the statute.

The referee made the following findings: "To aid in the enforcement of the minimum price of cigarettes, for many years the defendant Tax Commission has published and distributed to retailers a 'Cigarette Minimum Price Sheet'. In order to carry out its interpretation of RSA ch. 358, the Tax Commission also for many years has published and dis-

tributed to retailers a list of prices of cigarettes computed on the basis of the retailer's total cost, inclusive of the tobacco tax." This was the "unvarying consistent interpretation by the defendant Commission since the Unfair Sales Act was passed in 1941 and until September 13, 1972." "The New Hampshire Legislature has repeatedly impliedly approved this interpretation."

The referee also found the following: "On September 13, 1972 the Tax Commission issued an interpretation of RSA ch. 358 directing that the minimum six per cent markup on retail tobacco sales should be figured on the cost at the retail outlet, exclusive of the tobacco tax. This interpretation was issued for the purpose of lowering the market price of cigarettes in the hope that lowered prices would produce more cigarette sales and thereby increase the State's tobacco tax revenues." "In conformity with the September 13, 1972 interpretation of RSA ch. 358, the Commission issued a price sheet on September 15 following." "The Commission's actions of September 13 and 15, 1972, singled out cigarettes for discount pricing, while other items sold by retailers must still be priced six per cent above the retailer's total cost, inclusive of tax."

The divergent meanings attributed to the statute by the parties to this proceeding on the issue of cost to the retailer demonstrate the ambiguity of its language in that regard. See Note, *Constitutionality of Statute Prohibiting Sales At Less Than Cost,* 47 Yale L.J. 1201, 1203 (1938). It is a well established principle of statutory construction that a longstanding practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to the legislative intent. *Trice v. City of Cranston,* 110 R.I. 724, 730, 297 A.2d 649, 652 (1972); *see Bellows Falls & c. Co. v. State,* 94 N.H. 187, 190, 49 A.2d 511, 512-13 (1946).

It is uncontradicted that as administrator of the Unfair Sales Act with regard to tobacco products, the tax commission, through its tobacco tax division (RSA 78:23) and now by its miscellaneous tax division (RSA ch. 77-C (Supp. 1972)),

has interpreted the statute as providing that the "total cost at the retail outlet" on which the six percent markup was to be calculated included both federal and state taxes. The fact that this administrative interpretation of the statute went unchallenged for a period of over 30 years, that is, from its enactment in 1941 to the change in interpretation September 13, 1972, is entitled to great weight in determining the intended meaning of the statutory language. *Bellows Falls & c. Co. v. State*, 94 N.H. 187, 190, 49 A.2d 511, 512-13 (1946). Furthermore, instead of interfering with the previous interpretation, the legislature, as found by the referee, has repeatedly impliedly approved that interpretation by using it in estimating the revenue to be expected from various increases made in the tax rate on cigarettes. *See* Laws 1965, 132:1; Laws 1967, 159:1; Laws 1970, 5:10; Laws 1971, 475:1; 2 Am. Jur. 2d *Administrative Law* § 253 (1962).

The interpretation supported by the plaintiff is consonant with business practices as it bases the markup on the capital the retailer must invest to place the cigarettes on his shelves. That portion invested by him in the tax, state and federal, is not recovered unless and until he sells the cigarettes. It is to be noted that the commission does not seek the elimination of the federal tax from the cost on which the markup is based. Finally the referee properly found that the defendant's recent interpretation of RSA ch. 358 and its subsequent actions in issuing price sheets in accordance therewith permit and encourage unfair competition in the form of sales below cost contrary to the purpose of the Unfair Sales Act.

We hold that the interpretation placed on the statute by the referee is the meaning intended by the legislature: the total cost at the retail outlet on which the six percent markup allowed by RSA 358:1 is to be computed includes the tobacco tax precollected from the retailer by the wholesaler of cigarettes under RSA ch. 78. We do not consider *Harvey Payne, Inc. v. Slate Co.*, 345 Mass. 488, 188 N.E.2d 562 (1963), relied on by the defendant to be controlling. As pointed out by that court, their statute, unlike ours, had received at different times somewhat different administrative

516

interpretations. In view of the result reached, it is unnecessary to consider other issues raised by the parties.

The defendant is ordered to forthwith reinstate the prior interpretation of RSA ch. 358 thus including the state tobacco tax in the total cost at the retail outlet on which the six percent markup is to be computed in arriving at the minimum price for cigarettes under the Unfair Sales Act. It follows that any "Cigarette Minimum Price Sheet" contrary thereto is to be withdrawn and all future price sheets are to conform to the interpretation of the statute held to be correct in this opinion.

*Petition granted.*

KENISON, C.J., did not sit; the others concurred.