ROBERT J. QUINN *vs.* STATE ETHICS COMMISSION.

Suffolk.   September 9, 1987. — December 10, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH & O'CONNOR, JJ.

*Conflict of Interest. Commonwealth,* Officers and employees, Contracts. *Statute,* Construction. *Contract,* With Commonwealth, Consideration. *Public Employment,* Unethical conduct. *Bail Commissioner.*

A compensated employee of a State agency is prohibited by § 7 of G. L. c. 268A, the conflict of interest law, from also performing on a part-time basis the duties of a bail commissioner, where in both positions he had a contract in which he had a financial interest and in which the Commonwealth was an interested party. [215-218] LIACOS, J., with whom NOLAN & LYNCH, JJ., joined, dissenting.

CIVIL ACTION commenced in the Superior Court Department on June 6, 1987.

The case was reported to the Appeals Court by *Charles M. Grabau, J.* The Supreme Judicial Court granted a request for direct appellate review.

*David D. Kenefick* for Robert J. Quinn.

*Bruce T. Eisenhut* for State Ethics Commission.

WILKINS, J. The State Ethics Commission (commission) concluded that Robert J. Quinn violated § 7 of the State's conflict of interest law (G. L. c. 268A [1986 ed.]) when he served both as acting comptroller of the Massachusetts Water Resources Authority (MWRA) and as a bail commissioner appointed by the Superior Court of the Commonwealth pursuant to G. L. c. 276, § 57 (1986 ed.). Section 7, whose first paragraph is set forth in full in the margin,[1] in part forbids a State

---

[1] General Laws c. 268A, § 7, first par. (1986 ed.) states:

"A state employee who has a financial interest, directly or indirectly, in a contract made by a state agency, in which the commonwealth or a state

employee from knowingly having a financial interest in a contract made by a State agency in which the Commonwealth has an interest. The commission decided on May 6, 1986, that Quinn, as a compensated employee of the MWRA, a State agency (see G. L. c. 268A, § 1 [*p*]; St. 1984, c. 372, § 1), violates § 7 when, as a bail commissioner, he receives a fee from a prisoner for conducting his or her bail hearing.

Quinn appealed the commission's decision to the Superior Court. See G. L. c. 268B, § 4 (*k*) (1986 ed.); G. L. c. 30A, § 14 (1986 ed.). A judge of that court reported the case to the Appeals Court.[2] We granted Quinn's application for direct appellate review.[3] We conclude that judgment should be entered affirming the commission's decision.

The commission's interest in the dual role of Quinn as a State employee of one agency and as a bail commissioner began in October, 1983, when the commission advised Quinn that his dual activities violated, not § 7, but § 4 of G. L. c. 268A. The commission ultimately abandoned § 4 as the basis for its concern, and in April, 1985, turned to the question whether Quinn's conduct violated § 7. In February, 1986, the commission held a hearing which led to its May, 1986, decision against Quinn.

---

agency is an interested party, of which interest he has knowledge or has reason to know, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both."

[2] The judge also reported a question. The parties have argued this case as if it were fully before us on the administrative record and not limited to the reported question. We shall treat the case in the same fashion.

In his report the judge recites that twenty-seven bail commissioners, approximately one-third of the eighty-five bail commissioners, are State employees. He adds that the Bail Committee of the Superior Court is concerned that some bail determinations may not be made seasonably if those bail commissioners who have other State jobs are disqualified from acting as bail commissioners.

[3] At the same time, the judge reported the case of the Bail Committee of the Superior Court *vs*. State Ethics Commission. We granted the applications of the bail committee and the commission for direct appellate review of that case. Both cases are before us on the same record. Quinn and the Bail Committee filed a joint brief. The cases were argued together before us. The Bail Committee's appeal is also decided today. See *Bail Comm. of the Superior Court* v. *State Ethics Comm'n, post* 223 (1987).

Quinn served as executive assistant to the Commissioner of the Metropolitan District Commission from July, 1977, until some time in 1985 when he became acting comptroller of the MWRA. In each of these positions he was a State employee. See G. L. c. 268A, § 1 (*q*). In these positions he had a contract in which he had a financial interest and in which the Commonwealth was an interested party. In 1972, the judges of the Superior Court, acting through their Bail Committee, appointed Quinn a bail commissioner for the Northern Norfolk Division (now the Dedham Division) of the District Court Department. The Bail Committee most recently reappointed Quinn in January, 1985.

We first consider the role of a bail commissioner. A bail commissioner performs duties which are identical to those performed by judges and clerk-magistrates in passing on prisoners' applications to be admitted to bail.[4] A bail commissioner, however, does not normally perform services in a courthouse or during normal court hours but rather holds a bail hearing in a police station or other place of detention where a person is being held under arrest at night or on weekends or holidays. The Superior Court appoints a bail commissioner, as authorized by G. L. c. 276, § 57, to serve in a designated judicial district when the volume of business is greater than can reasonably be handled by those already authorized to act on bail applications in that district. In this way bail commissioners assist in fulfilling the Commonwealth's obligation to extend to persons

---

[4] Judges, clerk-magistrates, and bail commissioners make virtually all the bail determinations in the Commonwealth.

The Governor, on petition of certain municipal officials, may commission a justice of the peace in the locality to take bail in criminal cases arising within the local judicial district. G. L. c. 218, § 36 (1986 ed.). Masters in chancery (G. L. c. 221, § 53) may also take bail. G. L. c. 276, § 57. The head of the office of bail administration in the office of the Administrative Justice of the Superior Court testified before the commission that in recent years Governors have taken the view that, because the Superior Court supervises all bail matters, the categories of justice of the peace and master in chancery authorized to take bail should fall by the wayside and that only bail commissioners should be appointed. He added, however, that there were still a few "out there" in each category.

arrested for crimes their statutory (G. L. c. 276, § 42) and constitutional (Massachusetts Declaration of Rights, art. 26; Eighth Amendment to the Constitution of the United States) rights to be considered for admission to bail. Bail commissioners are entitled to charge a fee to prisoners whose bail hearings they conduct. G. L. c. 262, § 24. Almost always they receive the maximum authorized fee.[5]

The duties of a bail commissioner stated by statute (G. L. c. 276, §§ 57, 58, 60, 61, 62-66) are supplemented by Rules Governing Persons Authorized to Take Bail (as amended in 1985) adopted by the Superior Court. These detailed provisions setting forth the manner and conditions under which a bail commissioner will perform his duties demonstrate beyond serious debate that a bail commissioner performs an important quasi judicial service for the Commonwealth within carefully prescribed conditions. Rule 14 requires a bail commissioner to respond with all reasonable promptness to calls for his services. The Superior Court supervises the distribution of work among bail commissioners to assure equitable treatment. The fact that the prisoner pays the commissioner's fee and may receive a benefit from the commissioner's services does not alter the fact that the commissioner is performing a service for the Commonwealth, in the same way a judge or a clerk-magistrate does.[6] The bail commissioner's duty is owed to the judicial department of the Commonwealth, and it is to conduct bail proceedings according to law.

---

[5] General Laws c. 262, § 24 (1986 ed.) provides as follows:

"The maximum fee to be charged by any person authorized to take bail or release on personal recognizance in the case of a person arrested for any misdemeanor or felony shall be fifteen dollars, regardless of the number of offenses. When the release on bail or personal recognizance is made between the hours of twelve midnight and six o'clock in the morning the maximum fee shall be twenty dollars, regardless of the number of offenses."

[6] Clerk-magistrates act on bail applications as part of their duties and thus they are not subject to the claim that they have a financial interest in two State employment positions. When a clerk or assistant clerk acts on a bail application at a place of detention not during regular working hours, G. L. c. 276, § 58, authorizes a charge of the same fee that a bail commissioner may charge.

We consider next the statutory background that leads to the legal questions we must decide. Chapter 268A is concerned with the appearance of and the potential for impropriety as well as with actual improprieties. See *Edgartown* v. *State Ethics Comm'n,* 391 Mass. 83, 88-89 (1984); Buss, The Massachusetts Conflict of Interest Statute: An Analysis, 45 B.U.L. Rev. 299, 374 (1965). The dissent ignores this important fact. Section 7 prohibits State employees from having financial interests in government contracts. See Buss, *supra* at 367; R. Braucher, Conflict of Interest in Massachusetts, in Perspectives of Law, Essays for Austin Wakeman Scott, 3, 8 (R. Pound, E. Griswold, A. Sutherland eds. [1964]). Barring an exemption or exception under § 7, an employee of one State agency may not receive compensation for performing personal services under contract with another State agency.

Under § 7, a State employee may lawfully perform certain part-time personal services for compensation for another governmental entity. For example, on certain conditions, a State employee may be compensated for part-time teaching in "an educational institution of the Commonwealth" and for part-time employment in certain State-funded facilities, such as correctional, public health, and mental health facilities. § 7. Some of the same considerations that support the exceptions made for these State employees might warrant adoption of a statutory exception for bail commissioners. Section 7 does not, however, provide a general exception for all State employees who want to work part-time for another State agency, even if it is clear that (1) the employee's status as a State employee was not a factor in his obtaining part-time employment with the second government agency and (2) that status has no bearing on the amount of part-time service the employee may be asked to provide. The fact that the record does not show either that Quinn has compromised his position as bail commissioner or that there is an actual conflict is of no significance, although the dissent somehow finds some solace for its position from these facts. The commission ruled that no exemption or exception under § 7 applied to Quinn, and he does not contend otherwise.

A bail commissioner is a State employee under the definition set forth in G. L. c. 268A, § 1 (*q*) (1986 ed.). A State employee includes "a person performing services for . . . a state agency . . . by . . . appointment . . . with or without compensation, on a . . . part-time . . . basis." Section 1 (*p*) defines a State agency as "any department of state government including the executive, legislative or judicial." Surely, as we have noted, a bail commissioner performs services for the judicial department of the State government when he makes a bail determination. Quinn does not argue that a bail commissioner is not a State employee under G. L. c. 268A as a person performing services for the judicial department on a part-time basis. The fact, however, that a bail commissioner performs services for a State agency, and thus is a State employee for the purposes of G. L. c. 268A, does not answer the question whether Quinn has a financial interest in a contract made by the judicial department of State government. Chapter 268A defines neither "financial interest" nor "contract." Quinn argues that he has no contract with the Superior Court (but only with the prisoner being released on bail) and, even if he does have a contract with a State agency, he has no financial interest in it (because he is compensated by the released prisoner and not by the State).

The commission concluded, based on "the broad language" of § 7 and "the preventative purposes of the conflict of interest statute" that acting "as a bail commissioner in exchange for fees results in a contract within the meaning of [§ 7] between the Superior Court Department and the bail commissioner" whenever "the bail commissioner accepts the opportunity of his appointment and performs his duties and service pursuant to statutory requirements." The commission further stated that there was a contract between Quinn and the Commonwealth under traditional contract law principles. We prefer the latter analysis (see *Conley* v. *Ipswich,* 352 Mass. 201, 203-204 [1967]), tested against the legislative purpose of § 7.[7]

---

[7]The commission also stated in a footnote to its decision that because Quinn is a State employee (§ 1 [*q*]) as a bail commissioner, § 7 (absent an exemption) prohibits him from having an employment contract with the

In exchange for his appointment as a bail commissioner with the opportunity to receive fees from prisoners, Quinn has agreed with the judicial department to perform the quasi judicial duties of a bail commissioner on behalf of the judicial department whenever he is properly called upon. This arrangement has all the essential elements of an executory contract, a bargained-for exchange — offer, acceptance, and consideration. The judicial department offered to appoint Quinn; Quinn offered to serve if appointed. Each accepted the other's offer. Consideration in the common law sense — a benefit to the promisor — is Quinn's opportunity to earn fees which follows from his agreement that he would serve as a bail commissioner. See *Marine Contractors Co.* v. *Hurley,* 365 Mass. 280, 286 (1974); *Cottage St. Methodist Episcopal Church* v. *Kendall,* 121 Mass. 528, 529-530 (1877). It makes no difference in deciding whether there is consideration that the fees will be paid by prisoners and not by the Commonwealth. *Marine Contractors Co.* v. *Hurley, supra,* and authorities cited.[8] See Restatement (Second) of Contracts § 714 (4) & comment e (1979).

Certainly at the time Quinn accepts a fee from a person seeking bail he has a direct financial interest in his contract with the judicial department of government. We need not decide

---

MWRA. We need not pass on this independent ground for the commission's decision.

We reject the attempt made in the commission's brief to support its decision by reliance on G. L. c. 268A, § 4. The commission did not rely on § 4 in its decision. Earlier it had rejected the application of § 4 to Quinn. An administrative agency's appellate brief may not properly be used to provide new grounds for its decision. See *Blakeley* v. *Assessors of Boston,* 391 Mass. 473, 476 (1984).

[8] We do not accept the commission's idea that there is a separate contract between Quinn and the Superior Court whenever he acts as a bail commissioner. No judge or representative of the Superior Court is involved in given instances in selecting which bail commissioner will be called or when he will be called.

whether he has a financial interest in his contract before he accepts a fee.[9]

Consistent with the legislative purpose of c. 268A, section seven does not deny a State employee the right to serve others at their request as a notary public, an auctioneer, a doctor, or an electrician, or in some other capacity in which the Commonwealth has granted him or her a license or commission to engage in a trade, profession, or activity. In those capacities the State employee is primarily serving a private person or entity and not the State. A person with such a license or commission makes no promise to do anything for the benefit of the Commonwealth in exchange for the commission or license (unless the Commonwealth is a customer, client, patient, or the like). There is thus for these people no contract in the sense of the word in § 7.

A bail commissioner, on the other hand, is acting primarily to fulfill the interests of the Commonwealth. When Quinn, as an employee of the MWRA, also serves as a bail commissioner, he serves at the same time in two compensated capacities for the Commonwealth. That is what, barring exception or exemption, § 7 prohibits.[10]

---

[9] In their joint brief, Quinn and the Bail Committee expressly disavow reliance on what they call "a well-established line of authority which holds that an appointed public officer does not have a contract of employment with the appointing authority," citing *Butler* v. *Pennsylvania*, 51 U.S. (10 How.) 402, 417 (1850); *Crenshaw* v. *United States*, 134 U.S. 99 (1890); *Kingston* v. *McLaughlin*, 359 F. Supp. 25 (D. Mass. 1972) (three-judge court), aff'd mem., 411 U.S. 923 (1973). These cases involved the question whether particular persons holding public office had contract rights which were protected by the contract clause of the Constitution of the United States. The determination not to rely on a claimed analogy between contract clause cases and contracts under § 7 seems appropriate.

[10] We have answered the issues in this case without resort to certain principles sometimes thought to be instructive in construing a statute. The commission's interpretation that § 7 applies to bail commissioners is not a long-standing agency construction of a statute applied since the statute's enactment. We give no particular weight to the commission's construction of § 7 in this respect. See *Harvey Payne, Inc.* v. *Slate Co.*, 345 Mass. 488, 491-492 (1963). On the other side of the interpretation equation, we see no reason to give a strict construction to a statute having criminal penalties for its violation when it is being construed in a civil context and applied only prospectively.

Although we agree with the commission and conclude that Quinn while an MWRA employee may not receive fees as a bail commissioner without violating § 7, we are concerned that the proper administration of bail proceedings in this Commonwealth not be disrupted by the application of the commission's view of § 7 after more than twenty years during which no action was taken in this area.[11] This court has a constitutional concern with the administration of the courts and the protection of constitutional rights of persons in custody and charged with crimes. In his discretion, the trial judge may choose to take evidence on the impact on bail-setting practices of the immediate implementation of the commission's decision (which might eliminate almost one-third of all bail commissioners) and on whether there may be some ready procedure by which bail commissioners who hold State jobs may expeditiously be reappointed under an exemption available under § 7 or otherwise. Subject to these considerations, judgment shall be entered affirming the decision of the commission effective on and after the date of the judgment.

*So ordered.*

LIACOS, J. (dissenting, with whom Nolan and Lynch, JJ., join). I dissent. The court decides today to uphold the newly expanded view of the State Ethics Commission (commission) of the sweep of G. L. c. 268A, § 7 (1986 ed.), in an area in which, as the court states, for "more than twenty years . . . no action was taken" by the Attorney General or by the commission. The impact of this decision is, in my view, such as to call into question accepted practices not only as to the appointment of bail commissioners, but also other officers, such

---

[11] Section 7 has remained unchanged in the respect relevant here since its enactment in 1962. See St. 1962, c. 779, § 1.

If § 7 applies to the circumstances of this case, as we hold it does, the fact that for many years no efforts were made to enforce it as to bail commissioners who were government employees in no way calls for a different conclusion.

as justices of the peace and notaries public. Additionally, as the court admits, this decision may have significant impact on the availability of persons qualified to admit prisoners to bail.[1] The court reaches this position even though it admits that "[t]he fact . . . that a bail commissioner . . . is a State employee for the purposes of G. L. c. 268A, does not answer the question whether [he] has a financial interest in a contract made by the judicial department of State government." I agree with the court that c. 268A defines neither "financial interest" nor "contract."[2] *Supra* at 215.

In my view, the proper course would be to eschew the traditional contract law analysis which the court embraces so as to ascertain correctly the intention of the Legislature in enacting G. L. c. 268A. The court's reliance on technical contract analysis to arrive at the conclusion that Quinn is violating § 7 of the conflict of interest law obscures the situation and results in a finding of a conflict of interest where the Legislature never intended one to be found and where one does not exist. "Our task [should be] to interpret the statute according to the intent of the Legislature, as evidenced by the language

---

[1] The court states: "[W]e are concerned that the proper administration of bail proceedings in this Commonwealth not be disrupted by the application of the commission's view of § 7 after more than twenty years during which no action was taken in this area. This court has a constitutional concern with the administration of the courts and the protection of constitutional rights of persons in custody and charged with crimes. In his discretion, the trial judge may choose to take evidence on the impact on bail-setting practices of the immediate implementation of the commission's decision (which might eliminate almost one-third of all bail commissioners) and on whether there may be some ready procedure by which bail commissioners who hold State jobs may expeditiously be reappointed under an exemption available under § 7 or otherwise." (Footnote omitted.) *Supra* at 218.

[2] Section 7 provides in pertinent part: "A state employee who has a financial interest, directly or indirectly, in a contract made by a state agency, in which the commonwealth or a state agency is an interested party, of which interest he has knowledge or has reason to know, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both." A strict reading of the statute would result in the ludicrous situation whereby every State employee violates the section simply by being employed by the State. Technical, or literal, interpretations of the statute lead one to results obviously not contemplated by the Legislature.

used, and considering the purposes and remedies intended to be advanced." *Glasser* v. *Director of the Div. of Employment Sec.,* 393 Mass. 574, 577 (1984).

A brief survey of the history of the enactment of G. L. c. 268A is helpful. In 1961, following a major scandal involving the Metropolitan District Commission, the General Court first considered comprehensive conflict of interest legislation.[3] The reports issued by the House and Senate commissions appointed to study the issue indicate that the Legislature was concerned with the general deterioration of the moral fiber of the State government.[4] The Legislature feared that this decay in morality would permeate all departments of government.[5] To combat this, the Legislature enacted G. L. c. 268A, a conflict of interest statute for public officials and employees.

In essence, the statute seeks to combat secret dealings, influence peddling and other activities where the employee is confronted with a conflict of interest. *Sciuto* v. *Lawrence,* 389 Mass. 939, 946 (1983). *Everett Town Taxi, Inc.* v. *Aldermen of Everett,* 366 Mass. 534, 535 (1974). The statute has both criminal and civil aspects. *Saccone* v. *State Ethics Comm'n,* 395 Mass. 326, 328-330 (1985). Compare, e.g., G. L. c. 268A, §§ 2 and 3 (criminal), with § 9 (civil). Sections 2 and 3 deal with bribery and the offering or acceptance of gifts that are meant to influence an employee. Section 5 precludes former State employees, in specified circumstances, from acting as attorneys or agents for others in matters in which the Commonwealth has a financial interest. The basic concept of this law is signified in the words of the Legislative Research Council: "A conflict of interest in government exists when a government employee is involved in any personal action which affects the public interest. In more explicit terms, a conflict arises when a legislator or other public official is placed in a position where,

---

[3] See Report Submitted by the Legislative Research Council Relative to Conflict of Interest, 1961 Senate Doc. No. 650, at 14.

[4] See 1961 Senate Doc. No. 650, at 14; Final Report of the Special Commission on Code of Ethics, 1962 House Doc. No. 3650, at 9-10.

[5] 1961 Senate Doc. No. 650, at 14.

for some advantage to be gained for himself, he finds it difficult or impossible to devote himself with complete energy and loyalty to the public interest."[6]

The conduct the legislators sought to prohibit when they wrote § 7 also involved conflict — the conflict that arises due to self-dealing and double allegiances. The Legislature did not want a State employee to use his position as a State employee to obtain for himself a financially beneficial contract, and the Legislature did not want the State employee's actions and judgment to be clouded because of an extracurricular contract. Neither of those situations is involved here.

Quinn works full time for the Massachustts Water Resources Authority (MWRA), a division of the executive branch. On an occasional night or weekend, he works as a bail commissioner for the Superior Court, a division of the judicial branch. There is nothing in the record that suggests that Quinn used his position in the MWRA to obtain the bail commissioner position, a position in an unrelated department in a separate branch of government. Furthermore, nothing in the decision of the commission, or in this record, indicates that his position in the MWRA is compromised by his position as bail commissioner or that he cannot faithfully perform his duties as bail commissioner. His dual positions have not, in any way, made it "difficult or impossible to devote himself with complete energy and loyalty to the public interest." Quinn is holding two distinct jobs. There is no conflict — the conduct the Legislature sought to proscribe.

The court's attempt to distinguish notaries public from bail commissioners seems to me to be disingenuous. If strict contract analysis applies in this case, then it also applies to State employees who are notaries public, and their activities would also involve conflicts of interest. Like bail commissioners, notaries public are appointed. G. L. c. 222, § 1 (1986 ed.). Notaries public make themselves available to serve the public.

---

[6] 1961 Senate Doc. No. 650, at 15. I do not, by this brief description of the essence of the statutory purpose, purport to describe the statute in its entirety, nor to touch on its applicability to county and local public employees.

The public who use the services of the notaries public pay a statutorily set fee. G. L. c. 262, § 41 (1986 ed.). The executive offers to appoint a State employee to be a notary public; the State employee offers to serve, if appointed. Each accepts the other's offer. The State employee's opportunity to earn fees which follow from the agreement that the employee would serve is the consideration. I find no tenable distinction between the activities of notaries public and bail commissioners regarding the applicability of G. L. c. 268A, § 7.

I find it difficult to accept that the Legislature intended, by the enactment of G. L. c. 268A, the consequences the court reaches today. The inactivity of the commission for many years leads me to believe that it, too, did not conceive that the Legislature intended that it have the power to regulate bail commissioners in the way it now claims. One must wonder where this result will lead, and whether the result achieved here will truly elevate honest government or simply, and unfortunately, effectively deprive many prisoners of their right to be free on bail. G. L. c. 276, § 58 (1986 ed.). I dissent.