## Commonwealth *vs.* Joseph F. Nugent.

No. 02-P-1095.

Plymouth. October 15, 2003. - April 30, 2004.

Present: Mason, Brown, & Berry, JJ.

*Conflict of Interest. Municipal Corporations,* Officers and employees.

This court concluded that a defendant charged with violating G. L. c. 268A, § 20, the conflict of interest statute, had the burden to produce evidence that he disclosed to the town clerk his purchase of land from the town employing him in order to bring himself within an exception to the conflict statute, which he failed to do. [68-69]

A criminal defendant who purchased land from the town employing him could not invoke an exception to the conflict of interest statute, G. L. c. 268A, § 20, for those who immediately divest themselves of all interest in the offending contract within thirty days of learning of the violation, where the defendant, by the final day of the thirty-day period, had merely agreed to reconvey the parcel to the town, but neither executed nor delivered a new deed to the town until several months later, moments before the grand jury was convened. [70-72]

Indictment found and returned in the Superior Court Department on April 3, 2000.

The case was heard by *Linda E. Giles,* J.

*Robert E. Kelley* for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

Brown, J. After a jury-waived trial, the defendant was convicted of violating § 20 of G. L. c. 268A, the conflict of interest statute. On appeal the defendant makes two arguments. First, he claims that the Legislature intended a de minimis exemption to G. L. c. 268A, § 20, which would exempt his conduct from criminal liability. Second, the defendant argues that even if his purchase of land from the town violated the statute, he availed himself of a specific statutory exemption by

disposing of the land within thirty days of learning of the statutory violation.

The relevant facts were undisputed. In November, 1996, the treasurer and collector of the town of Hanson (treasurer), Carole McCormack, prepared to sell at auction parcels of land that the town had acquired by tax title foreclosures. She scheduled the auction for December 2, 1996, in the town hall, and posted notice of the event in the required locations, including the newspaper and the town hall. The defendant, who worked in the town hall as the executive secretary to the board of selectmen (board), a position he had held at that time for approximately twelve years, saw the notice of the auction and attended the event.

McCormack conducted the auction by reading a brief description that included the square footage of each parcel that was to be sold. When she got to lot 2066 she announced that it contained 2,400 square feet. The bidding began, and the defendant's bid was the highest, at $200. The defendant paid the agreed upon price, and the executed deed was delivered to him on or about January 31, 1997, and then recorded in the registry of deeds.

About a year later, the defendant tried to develop the land. He thought, based on his investigation of the property before the auction, that the lot contained 14,400 square feet. The defendant testified that he did not hear McCormack recite the square footage of the lot at the auction. When he was unable to install a septic system because of the small size of the lot described in the deed, he brought the matter to McCormack's attention. After she looked at several maps in town hall, McCormack noticed that the lot was not consistently described on the town maps and the map in the assessor's office, indeed, reflected that the lot contained 14,400 square feet.[1]

McCormack contacted the town's tax title attorney, Coppola and Coppola, who provided an advisory letter to her stating that a confirmation deed would be issued. This, in turn, prompted

---

[1] She testified that "the assessor's maps are for taxation only, and they have combined lots." The defendant also testified that when he examined old maps, he realized that lot 2066 on the current assessor's map was composed of six lots.

the defendant to prepare a letter for the chairman of the board of selectmen, Charles Flynn, authorizing McCormack to issue a confirmatory deed to the defendant that described the lot as containing 14,400 square feet. The defendant presented the letter to Flynn, who signed it. A new deed was issued on May 28, 1998, and recorded.

Eventually, news of the conveyance of the confirmatory deed and the development potential that it created became public. Complaints began to mount in the selectmen's office, prompting the board to launch an investigation. On July 19, 1999, the board met to review the report they had requested and received on the matter from town counsel, Everett Marder. On August 11, 1999, pursuant to instructions from the board, Marder faxed a letter and copy of pertinent by-laws to the defendant's attorney, Shawn Cotter. The by-laws, which are similar to the conflict of interest statute, reference the State statute. This reference represents the first time the conflict of interest statute was raised by the board as having potential applicability to this defendant's situation.

On August 17, 1999, the board met with the defendant in executive session to discuss his continued employment. During the meeting the board and the defendant reached an agreement under which the defendant would resign in exchange for certain compensation and would deed the property he had bought at the auction back to the town in exchange for $200. The terms were memorialized in a written settlement agreement dated and signed September 21, 1999.

Town counsel advised the defendant's attorney that the agreement could not be performed until the money to fund it was approved at town meeting and suggested that the defendant hold off doing anything until "we[] see what happens." Town meeting, in fact, did not appropriate all of the monies necessary to fund each term of the settlement agreement. When the members of the board, in turn, took the position that they were for that reason unable to perform the agreement, the defendant filed a civil suit in the Superior Court, which remained unresolved at the time of the trial in the case at bar.

Finally, on March 24, 2000, the day the defendant and his attorney were to appear before the grand jury in this case, the

defendant executed the deed returning the property to the town. The deed, however, was not forwarded to the town until June, 2000. Upon receipt, the town sent the defendant a check for $200.

*Conflict of interest.* The section of the conflict of interest statute, G. L. c. 268A, under which the defendant was charged, § 20, reads in material part (as amended through St. 1983, c. 481) as follows:

> "(a) A municipal employee who has a financial interest, directly or indirectly, in a contract made by a municipal agency of the same city or town, in which the city or town is an interested party of which financial interest he has knowledge or has reason to know, shall be punished by a fine of not more than three thousand dollars or by imprisonment for not more than two years, or both.

> " . . .

> "This section shall not apply (a) to a municipal employee who in good faith and within thirty days after he learns of an actual or prospective violation of this section makes full disclosure of his financial interest to the contracting agency and terminates or disposes of the interest, or (b) to a municipal employee who is not employed by the contracting agency or an agency which regulates the activities of the contracting agency and who does not participate in or have official responsibility for any of the activities of the contracting agency, if the contract is made after public notice or where applicable, through competitive bidding, and if the municipal employee files with the clerk of the city or town a statement making full disclosure of his interest and the interest of his immediate family . . . ."

On appeal the defendant does not dispute that he is a municipal employee, as that term is defined in G. L. c. 268A, § 1. Similarly, the defendant concedes on appeal, as he did at trial, that his purchase of lot 2066 at the tax title foreclosure auction created a "financial interest" in a contract made by the municipality that employed him. See *Graham* v. *McGrail,* 370 Mass. 133, 138-139 (1976). Rather, the defendant's appeal focuses primarily on the issue whether there is an exemption

that applies to his situation and places his conduct outside the scope of criminal liability imposed by the statute.

At the outset, the defendant attempts to argue that one of the statutory exemptions is actually an element of the offense. Section 20 provides that criminal liability shall not apply "(b) to a municipal employee . . . who does not participate in or have official responsibility for any of the activities of the contracting agency, if the contract is made after public notice or where applicable, through competitive bidding, and if the municipal employee files with the clerk of the city or town a statement making full disclosure of his interest . . . ." Relying on this language, the defendant argues that because the Commonwealth failed to show that he did not disclose his interest to the town clerk before purchasing the land — which, according to the defendant, is an element of the offense — the evidence is insufficient to establish his guilt. The argument misses the mark.

Giving notice to the town clerk brings the defendant within an exception to the general prohibition against a municipal employee entering into a contract with his or her municipal employer and, in our opinion, is to be viewed as an affirmative defense. In other words, the burden is on the defendant to come forward with evidence that he gave the proper notice. Cf. *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977) (holding of license brings person within an exception to general prohibition against carrying a firearm and is affirmative defense). See also G. L. c. 278, § 7; *Commonwealth* v. *O'Connell*, 438 Mass. 658, 664 (2003). Here, the defendant failed to proffer any evidence to meet his burden of producing evidence that disclosure was made to the town clerk bringing him within an exception to the conflict statute. Therefore, he is not entitled to rely on this defense. Moreover, even if the auction bid were covered by the exemption, the subsequent "confirmatory deed," which varied the property conveyed at the competitive auction, would fall within the prohibition or the statute, as that contract was not made after public notice or through competitive bidding. (Nor was there any evidence of its disclosure to the town clerk.)

The defendant's more significant arguments are as follows. First, he claims that the Legislature intended to exempt "de minimis" violations from the statute's application. The

defendant argues that because he purchased the land at a public auction, which had been properly posted, and where he fairly obtained the deed by being the highest bidder, his conduct ought not to fall within the statute's reach. This argument has some appeal; we note, however, that the statute does not contain language exempting violations below a certain dollar amount or inconsequential or unsubstantial violations of the conflict of interest laws. We need not decide this question, in any case, because here the violation was more than "de minimis." See *Quinn* v. *State Ethics Commn.*, 401 Mass. 210, 220 (1987) (Liacos, J., dissenting) ("[T]he statute seeks to combat secret dealings, influence peddling and other activities where the employee is confronted with a conflict of interest"). Here, the defendant participated in preparing a confirmation deed to himself for property containing 14,400 square feet, substantially more square footage than the 2,400 square feet announced at the auction and worth substantially more than the $200 he paid at the sale.

Second, the defendant claims that he disposed of or terminated his interest in the land within thirty days of learning of the violation and that the trial judge erred when she concluded otherwise. The trial judge ruled, at the conclusion of the case, that the defendant's acceptance and recording of the original deed on January 31, 1997, was the operative date for determining when the defendant learned of the violation and, therefore, that his conveyance of the property back to the town on March 24, 2000, was "woefully untimely."

Despite the defendant's protestations to the contrary, there is support in the record for the judge's conclusion that the defendant knew of the violation when he first accepted the deed in 1997. Specifically, the defendant, in 1997, had been employed as the executive secretary for the board for almost twelve years. "[B]asically," as he described the job at trial, he "was the administrator for the town under the direction of the board of selectmen." As a full-time employee in the town's executive office, where the selectmen, themselves, were only present on a part-time basis, it is reasonable to infer that over the course of his lengthy employment the defendant had developed a familiarity with the conflict of interest laws. More particularly, the

minutes of the board's meeting on August 17, 1999, reflect that one of the selectmen "pointed out that it is not new to disclose any financial matters to the board," evidence that there had been previous discussions centering on compliance with the conflict of interest laws.[2]

Even if we assume that the record is inadequate to support the judge's ruling that the defendant learned of the conflict when he received and recorded the original deed, the defendant's position is not advanced. According to the defendant, the operative date for determining when he first learned of the violation is August 11, 1999, the date when he met with his attorney to discuss the letter forwarded by town counsel. The defendant then argues that he terminated his interest in the property when he entered into a binding contract on August 17, 1999, to reconvey the property to the town.

If we adopt August 11, 1999, as our starting point, § 20 required the defendant to terminate or dispose of his interest in the property within thirty days of that date, or no later than September 11, 1999, in order to avoid the application of the statutory penalties. During this time period the defendant offered to reconvey the property to the town. The offer was accepted by the board on August 17, 1999, as part of an over-all settlement that included the terms of the defendant's departure from his employment with the town, but the deed was not actually executed or conveyed on that date.

According to the defendant's attorney, the town counsel told him to "hold onto everything" until the October special town meeting, which would determine whether the terms they had agreed upon would be funded. In fact, the defendant did not reconvey the property to the town until March 24, 2000, the day he had to appear before the grand jury on the charge in this case, and he did not deliver the deed until June, 2000.

The part of § 20 that permits a municipal employee to avoid

[2]The town by-law required prior disclosure to the town finance committee of any contract or agreement from which the employee would derive any direct or indirect benefit and majority approval by the finance committee, as well as compliance with G. L. c. 268A, which in § 19 requires disclosure to the official responsible for appointment to the position, and in § 20 requires prior disclosure to the town clerk.

the application of the statute's criminal penalties requires the employee to "terminate[]" or "dispose[] of" his or her interest within thirty days of learning of the violation. Although "terminate" and "dispose" are not defined in the statute, the terms are neither ambiguous nor difficult to understand. "Terminate," according to Webster's Third New International Dictionary 2359 (1993), means "to bring to an ending" or "to end formally and definitely"; while "dispose of" means "to transfer into new hands or to the control of someone else," to "relinquish." *Id.* at 654. Here, the defendant did neither.

On September 11, 1999, the final day of the thirty-day period, the defendant had not delivered a new deed to the town, nor had he executed one. Rather, he had merely promised to reconvey the property as part of an agreement that was subject to approval by town meeting. (In fact, he withheld reconveyance pending the town's performance to his satisfaction of terms independent of the conflict of interest.) Even if we were to view the agreement the parties reached during the August 17, 1999, meeting as a binding contract, that agreement does not suffice to terminate or dispose of the defendant's interest in the property. The opportunity to avoid criminal liability is clearly set forth in the statute. The offender must divest himself of all interest in the offending contract immediately. The requirement is a simple and straightforward one. Absent a relinquishment of the interest within thirty days, the criminal sanctions apply. The defendant's mere agreement to reconvey the parcel fails to satisfy the statutory requirement that he relinquish, without reservation, his interest. The defendant's failure to do so until moments before the grand jury was convened, and after he had caused a civil suit to be filed regarding the agreement, hardly demonstrates what the statute requires, an act that embodies a clear recognition that the interest was obtained in violation of the public trust, and an immediate termination or disposal of that interest, in its entirety.

*Judgment affirmed.*