McEvoy, J.
The plaintiffs, Renaissance Worldwide Strategy, Inc. (“Renaissance”) and its subsidiary Management Decisions Group, Inc. (“MDG”), brought suit to enforce non-competition and non-solicitation clauses against five employees, Stephen E. Sheridan (“Sheridan”), John T. Porter (“Porter”), Sean P. O’Neill (“O’Neill”), Russell J. Pass (“Pass”), and Scott R. Hudson (“Hudson”) and Bridge Strategy Group, LLC. (“Bridge”), a company the five employees founded. The defendants bring this motion on the ground that Massachusetts courts lack personal jurisdiction over them. Renaissance, however, contends Massachusetts courts do have personal jurisdiction over the defendants through either contractual forum selection clauses or the Massachusetts long-arm statute. For the following reasons, defendants’ motion to dismiss for lack of personal jurisdiction is ALLOWED in part and DENIED in part.

BACKGROUND

Renaissance[3] is in the management consulting business. Its employees work with clients to address their issues and, also, find prospective clients. Employees hired as principals or vice-presidents are very important because client contact is directed towards these individuals not Renaissance.
Each defendant signed a standardized employment contract with a non-compete and non-solicitation clause, and a forum selection clause. The forum selection clause, term 12(e) of the contract, states “(j Judicial enforcement of this Agreement or any parts thereof by either of the parties hereto may be had in any appropriate court of the Commonwealth of Massachusetts having jurisdiction over either party to this Agreement or over the subject matter of this Agreement and, more particularly, may be enforced by a proceeding for specific performance in any such court of the Commonwealth of Massachusetts.”
For its Chicago, Illinois office, Renaissance hired Sheridan[4] as a vice-president on March 27, 1995, Hudson[5] as a principal and later vice-president on August 28, 1995, Pass[6] as a principal on December 1, 1995, and O’Neill[7] as a principal on February 27, 1998. For its Lincoln, Massachusetts office, Renaissance hired Porter[8] on December 15, 1997.
On September 25, 1998, the defendants resigned from Renaissance and in October 1998 officially incorporated Bridge[9] to compete with both Renaissance and its subsidiary MDG.[10] When the defendants left Renaissance, they allegedly took with them many of Renaissance’s clients with whom they had personal contact. Since the creation of Bridge, many employees have resigned from Renaissance and started working for Bridge.

DISCUSSION

When a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Massachusetts Rule of Civil Procedure 12(b)(2), the plaintiff “has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined.” Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978). The facts can be established through the parties’ pleadings, affidavits, and/or exhibits. See Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 18 Mass.App.Ct. 935, 935 (1984).
I. PERSONAL JURISDICTION
A. Forum Selection Clause
Personal jurisdiction is a waivable right. See Burger King v. Rudzewicz, 471 U.S. 462, 472 (1984). When a party signs a contract with a forum selection clause, that party has either consented to personal jurisdiction or waived the requirements for personal jurisdiction in that forum. See id. Thus, a valid, enforceable forum selection clause provides an independent basis for personal jurisdiction.
Forum selection clauses will be enforced in Massachusetts if they are reasonable and fair. See Jacobsen v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575 (1995). The party opposing enforcement of a forum selection clause faces a heavy burden. See The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). A forum selection clause will typically be enforced unless one of the following conditions is present: fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum that the defendant is effectively deprived of his day in court. See id. at 12-19.
1. Contracts signed by Renaissance
The defendants, Sheridan and Porter, have properly executed standardized employment contracts with Renaissance. The contracts contain a forum selection clause providing that any disputes arising under the contract shall be litigated in Massachusetts. Thus, if the forum selection clause is reasonable and fair, Massachusetts courts can exercise personal jurisdiction over Sheridan and Porter.
While no Massachusetts Appellate Court has addressed when a forum selection clause is reasonable, the Superior Court in Lectric's & Inc. v. Power Controls, Inc., 3 Mass. L. Rptr. 507, 1995 WL 809558, *1 (Mass.Super. 1995), found that other courts have used a six-factor test collected in Carefree Vacations, Inc. v. Brunner, 615 F.Sup. 211, 214 (D.C.Tenn. 1985). The six factors are “ 1) which state law governs the contract; 2) the residence of the parties and witnesses; 3) place of execution and/or performance of the contract; 4) public policy; 5) availability of remedies in the selected forum; and 6) inconvenience or injustice.” Id. Under *680 this test, The Bremen conditions become elements of these factors.
Applying the Lectric’s test to this case, the employment contracts expressly state that Massachusetts law will govern contract disputes. For the second factor, an examination of the parties’ residences reveals that apart from Renaissance, nearly all relevant persons are not residents of Massachusetts. Evidence for the third factor shows that the contracts were executed outside of Massachusetts, however, Renaissance submitted evidence that the defendants, Sheridan and Porter, partially fulfilled their employment duties in Massachusetts. Skipping to the fifth factor, this Court accepts the assumption, for this argument, that the remedies available in Illinois would be equivalent to those in Massachusetts.
The fourth factor, public policy, contains three of The Bremen conditions: prevention of fraud, undue influence, and overweening bargaining power.[11] The defendants contend that under Dentsply Int'l, Inc. v. Benton, 965 F.Sup. 574 (M.D.Pa. 1997), a forum selection clause should not be enforced because Renaissance has more bargaining power. See Dentsply, 965 F.Sup. at 579. The defendants, however, misinterpret the Dentsply Court. It did not issue such a broad ruling. Rather, it stated that forum selection clauses would not be enforceable when they were obtained by an employee signing an employment contract to preserve his or her job. See id. This case is dissimilar because the defendants had a choice of whether to enter into their employment relationship. In cases based on the instant fact pattern, courts tend to enforce forum selection clauses. See Spradlin v. Lear Siegle Management Services Co., Inc., 926 F.2d 865 (9th Cir. 1991), and cases cited therein.
Other factors courts examine to determine the balance of power are the presence of boilerplate language and the sophistication of the employee. Boilerplate language in standard form agreements, such as a forum selection clause, does not necessarily render them unenforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594 (1991) (upholding forum selection clause on a cruise ticket between an international company and a passenger); Microfibres, Inc. v. McDevitt-Askew, 29 F.Sup.2d 316, 321 (D.R.I. 1998) (finding forum selection clause in a standard employment contract valid). Courts also tend to enforce boilerplate language in contracts where the defendants are found to be sophisticated and experienced. See LFC Lessor, Inc. v. Pearson, 585 F.Sup. 1362, 1364 (D.Mass. 1984) (finding defendant businessman who signed the contract bound by forum selection clause which he could have read and was easily understood); C. Pappas Co., Inc. v. E.&J. Gallo Winery, 565 F.Sup. 1015, 1017 (D.Mass. 1983) (finding defendant was sophisticated and bound by forum selection clause). After following the United States Supreme Court’s reasoning in Carnival Cruise Lines, this Court finds that the presence of boilerplate language does not bar enforcement of the forum selection clause and that, based on their salaries and job descriptions, the defendants are highly sophisticated individuals.
Another public policy issue is the effect on business transactions of not upholding this forum selection clause. Enforcing forum selection clauses in contracts increases the certainty and predictability of business transactions. See Dentsply, 965 F.Sup. at 579. As the defendants state, Renaissance is a national management consulting business which hires sophisticated individuals to help it remedy its clients problems. Requiring Renaissance to litigate in multiple jurisdictions would expose Renaissance to potentially increased costs and affect its ability to deliver its services. See Carnival Cruise Lines, 499 U.S. at 593-94; Design Strategy Group Corp. v. Nghiem, 14 F.Sup.2d 298, 301-02 (S.D.N.Y. 1998). This Court finds that substantial benefits inure to businesses that are able to preselect jurisdictions in which they will litigate business disputes.
The last factor under Lectric’s, inconvenience or injustice, encompasses the final condition discussed in The Bremen: such serious inconvenience in litigating in the selected forum that the defendant is effectively deprived of his day in court. The defendants simply allege that it would be inconvenient and unjust to make them litigate in Massachusetts especially when a more convenient forum exists. However, a plain allegation without proper support is insufficient to satisfy the defendants’ “heavy burden” of proof. See Microfibres, Inc. v. McDevitt-Askew, 20 F.Sup.2d 316, 325 (D.R.I. 1998). Additionally, the fact that a more convenient forum exists, specifically Chicago, does not eliminate the fact that “any inconvenience arising from the [contract’s] forum selection clause was foreseeable at time of contracting." Design Strategy Group Corp., 14 F.Sup.2d at 301. As the defendants are skilled businessmen with knowledge of the forum selection clause, this Court finds that they have failed to carry their “heavy burden” of demonstrating the severity of inconvenience and injustice required.
In summary, this Court finds that the forum selection clause is reasonable under the six-factor test in Lectric’s. The defendants, Sheridan and Porter, consented to jurisdiction in Massachusetts when they signed their employment contracts.
2. Contracts not signed by Renaissance
The employment contracts state “IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and the year first above written.” The defendants, O’Neill, Pass, and Hudson, signed their respective contracts with Renaissance. Renaissance, however, failed to sign those employment contracts.[12]
The elements of a contract are (1) an offer, (2) an acceptance, and (3) consideration. See Quinn v. State Ethics Comm’n, 401 Mass. 210, 216 (1987). The par *681 ties do not contest that an offer for employment was made, but rather dispute whether or not there was an acceptance to the written contract terms. Where the language of a contract is unambiguous, the contract must be enforced according to its terms. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). The above-quoted contract provision, contained in O’Neill, Pass, and Hudson’s contracts, explicitly conditions the enforceability of the employment contract upon its being signed by both parties. As Renaissance never signed the defendants’ employment contracts, there was never an acceptance of the contracts and their written terms. Thus, the forum selection clauses in these written contracts are not enforceable against O’Neill, Pass, and Hudson.[13]
3. Bridge Strategy Group
Bridge does not have a contract with Renaissance. Therefore, Bridge has not consented to waive personal jurisdiction over itself through a forum selection clause.
B. Personal Jurisdiction through long-arm statute
Personal jurisdiction over a non-resident defendant requires a two-step analysis. First, the court must be authorized to exercise jurisdiction over the defendant pursuant to the Commonwealth’s long-arm statute, G.L.c. 223A, §3. See Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). The court must then determine if the exercise of jurisdiction is consistent with the Due Process Clause of the U.S. Constitution. See id.
The relevant portion of General Laws c. 223A, §3 provides that Massachusetts courts “may exercise personal jurisdiction over a person, who acts directly or by an agent, as to the cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth; . . . (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . .”
1. The individual defendants
Renaissance claims that the defendants, Sheridan, Porter, O’Neill, Pass, and Hudson, breached (1) their fiduciary duty to the company and (2) their employment contracts, (3) tortiously interfered with Renaissance’s advantageous business relationships, and (4) violated General Laws c. 93A. The defendants contend that Renaissance has failed to produce sufficient evidence of contacts to justify long-arm jurisdiction. Renaissance, in turn, produced the affidavit of Elizabeth C. Hughes (“Hughes”) which listed the dates from Renaissance’s records that Sheridan, Porter, O’Neill, and Pass worked in Massachusetts for Renaissance.[14]
For personal jurisdiction to arise under §3(a), “the defendant must have transacted business in Massachusetts, and the plaintiffs claim must have arisen from the transaction of business by the defendant.” Tatro, 416 Mass. at 767. The “transacting any business” requirement is construed broadly, “(a)lthough an isolated (and minor) transaction with a Massachusetts resident may be insufficient.” Id. The “arising under” requirement of §3(a) “should be interpreted as creating a ‘but for’ test.” Id. at 770. That is, but-for the business transacted in Massachusetts by the defendant, the plaintiff s claim would not have arisen.
It is the plaintiffs burden to offer affirmative facts on which to base personal jurisdiction. See id. at 767. To satisfy its burden, Renaissance offered Hughes’ affidavit. In it, Hughes stated the approximate dates in Renaissance’s records that Sheridan, Porter, O’Neill, and Pass worked in Massachusetts for Renaissance.[15] The flaw with this affidavit, which also constitutes the only evidence submitted on this issue, is that working in Massachusetts as an employee of Renaissance, by itself, does not identify a business transaction which could give rise to Renaissance’s claims. It appears that Renaissance’s claims arise regardless of the Massachusetts contacts set forth in Hughes’ affidavit. As the plaintiffs have failed to offer affirmative facts on which this court can find personal jurisdiction under subsection (a), this Court finds that it cannot assert personal jurisdiction over the defendants.
To establish personal jurisdiction over a defendant under the “tortious injury” language of §3(c), the plaintiff must first establish a prima facie tort. See Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 906 (1st. Cir. 1980). Even assuming that Renaissance has established a prima facie tort for at least one of its tort claims, under subsection (c) that tort must have occurred by act or omission in Massachusetts. Renaissance has failed to offer any proof pertaining to this requirement. Thus, this Court cannot exercise personal jurisdiction over the defendants based on subsection (c).
Under §3(d), the defendants must cause a tortious injuy to the plaintiff in Massachusetts while regularly doing or soliciting business, or deriving substantial revenue from services used or consumed in Massachusetts. See Whistler Corp. v. Solar Electronic, Inc., 684 F.Supp 1126, 1130-31 (D.Mass. 1988). In this case, Renaissance failed to offer evidence to support a finding that the defendants regularly conducted or solicited business in Massachusetts, or even derived substantial revenue from business in Massachusetts. [16] Upon the evidence submitted by Renaissance, there is no basis for personal jurisdiction under subsection (d).
*682 2. Bridge Strategy Group
Renaissance claims in its complaint that Bridge (1) tortiously interfered with its advantageous business relationships; (2) tortiously interfered with its employees’ contacts; and (3) violated c. 93A. Bridge denies the allegations.
When facing a motion to dismiss, the plaintiff must put forth affirmative facts demonstrating the basis of personal jurisdiction. See Tatro, 416 Mass. at 767. Renaissance has failed to do so with respect to Bridge. Under §3(a), Bridge must transact business in Massachusetts. Even using the required broad reading of “transacting business,” Renaissance has failed to offer any facts which would demonstrate that Bridge was transacting business in Massachusetts. Under §3(c), Bridge must have committed a tort in Massachusetts. Again, even assuming that Renaissance established a prima facie tort, it failed to demonstrate that Bridge’s tortious behavior occurred in Massachusetts. Under §3(d), Bridge must have caused a tortious injury in Massachusetts while transacting business or soliciting business or deriving substantial revenue from services used or consumed in Massachusetts. Renaissance failed to proffer facts showing that Bridge transacts business, solicits business, or derives substantial revenue from services used or consumed in Massachusetts. This Court cannot exercise personal jurisdiction over Bridge through the state’s long-arm statute because it does not appear on the facts submitted by Renaissance that there are grounds to do so.

ORDER

For the forgoing reasons, it is hereby ORDERED that the defendant’s motion to dismiss for lack of personal jurisdiction is ALLOWED without prejudice as to O’Neill, Pass, Hudson and Bridge and DENIED as to Sheridan and Porter.

 Renaissance is a Delaware Corporation with its principal place of business in Newton, Massachusetts.

 Sheridan is an Illinois resident.

 Hudson is an Illinois resident.

 Pass is an Illinois resident.

 0’Neill is an Illinois resident.

 Porter is a Connecticut resident.

 Bridge is incorporated as a Michigan Limited Liability Company with its principal place of business in Illinois.

 MDG is an Illinois corporation.

 As neither party discussed fraud or undue influence, this Court will not address these as bases to bar enforcement of a forum selection clause.

 Renaissance also failed to date Hudson’s and O’Neill’s employment contracts.

 This does not mean, however, that there was no employment agreement between the parties. The courts can examine the conduct of the parties for evidence of the existence of such an agreement and its terms. See Howard J. Alperin & Lawrence D. Shubow, Summary of Basic Law §7.3 (1996). In the instant case, no conduct related to the choice of forum issue.

 This court notes that Hughes failed to identify even a single occurrence of Hudson having come to Massachusetts much less one where he transacted business.

 All five defendants described in affidavits their relationship with Renaissance and their contacts with Massachusetts. Sheridan, Hudson, O’Neill, and Pass signed their employment contracts in Illinois, were hired for Renaissance’s Chicago office, never resided in Massachusetts, and resided in Illinois while employed by Renaissance. Porter was hired to split time between offices in Stamford, Connecticut and Lincoln, Massachusetts and resided in Connecticut while employed by Renaissance. Furthermore, the five defendants also stated that they have not worked for Bridge in Massachusetts.

 This Court does not reach the issue of whether Renaissance has stated sufficient facts to support that it has suffered a “tortious injury” in Massachusetts.